CHIEE JUSTICE DUVALL
delivered the opinion of the court:
Millett filed his petition on the 30th December, 1857, against William and James Pottinger, who were merchants, doing business at Owensboro and at Mount Dailey in Daviess county, to recover the amount of two bills of exchange on which the firm were bound. The plaintiff at the same time sued out an attachment against the defendants, on the ground set forth in his petition and affidavit, that the defendants had, for the fraudulent purpose and with the fraudulent intent of cheating, hindering, and delaying their creditors in the collection of their debts, sold their stock of goods &c. at the two establishments mentioned, to their younger brother Frank H. Pottinger.
*214 A number of other creditors brought their suits against the firm and sued out attachments on the same ground.
After the several attachments had been levied on the goods and effects of the defendants, Low & Whitney and Curd & White filed their petition on the 27th January, 1858, alleging that the firm ot Pottinger & Brother had on the 5th September» 1857, in contemplation of their insolvency, and with the design of prefering one of their creditors to the exclusion of all the rest, sold and transferred all their goods and effects to the said F. H. Pottinger.
The several suits were consolidated, and on final hearing the court below rendered a judgment directing a distribution of the iund arising from the sale of the effects of the firm and from the collection of debts due them, among all their creditors, pro rata, according to the act of March, 1S56, to prevent fraudulent assignments in trust for creditors &c. (1 Rev. Stat. 533.) From that judgment the attaching creditors have appealed.
From the evidence in the record it is perfectly clear that the pretended sale by this firm to their brother was the result of a fraudulent combination and arrangement, the only object and design of which was to place their property beyond the reach of their creditors; and that this design was well understood and concurred in by all the parties concerned. It is insisted that R. L. Pottinger, the father of the members of the firm, had bonafide claims against them which it was the object of the parties to secure. Such, it is true, was the form which the transactions was made to assume, but it was a mere form without substance.
As first stated the sale was pretended and colorable merely, and the notes given by the pretended purchaser, and which, as is claimed, were assigned to the father as a security for his debts and liabilities, were never intended to be inforcible or obligatory. There could have been no design or intention therefore to prefer R. L. Pottinger, conceding that he was a bona fide creditor, by securing his debts or liabilities. The notes partook equally of the fictitious and fraudulent, character of the entire transaction, none of the parties,.to which intended *215 that they should impose any liability on the pretended maker, or that they were to afford any security to the pretended assignor. These deductions are so conclusively sustained by alj the facts and circumstances proved in the case, that it is deemed unnecessary to advert to them specially.
In view of this state of fact, the right of the attaching creditors under the act of 1796 to set aside the fraudulent sale, and -to subject to the payment of their debts, the property and effects of the fraudulent vendors, is unquestionable. That act was not repealed, nor are the rights of creditors under it, taken away or impaired, by the acts of 1856 just referred to. The two statutes embrace distinct classes of cases and provide appropriate remedies for each.
The former act was intended to prevent fraudulent sales and conveyances, but it allowed, as has been often decided, a debtor to prefer by sale, mortgage or assignment, any one or more of his creditors. The latter act does not prohibit, or afford a remedy for sales or assignments that are merely fraudulent, but it does prohibit the preference which the former act allowed.
To maintain the right conferred upon creditors by the act of 1856, it is indispensable to show,Jirst, that the sale, mortgage or assignment was made “in contemplation of insolvency,” and second, that it was made by the debtor “with the design to prefer one or more creditors, to the exclusion in whole or in part of others.” The absence of either one of these essentials is fatal to the claim of the party seeking the benefit of the act. However fraudulent the transaction may be, unless accompanied by the motive or design to prefer a creditor, it does not operate as an assignment and transfer of the property of the debtor, inuring to the benefit of all his creditors.
Inasmuch as there was no such design proved in the present case, it results that the judgment, complained of was erroneous, and prejudicial to the appellants, who were clearly entitled to the fund in contest according to their respective priorities.
The judgment is therefore reversed, and the cause remanded for a judgment and further proceedings not inconsistent with this opinion.