CASE 24—PETITION EQUITY—NOVEMBER 23.

# Meier v. Flinsbach, &c.

APPEAL FROM LOUISVILLE CHANCERY COURT.

1. UNLAWFUL PREFERENCE BY INSOLVENT DEBTOR. — Where a mortgagee releases his mortgage and accepts from the debtor, who is insolvent, a mortgage upon other property to secure not only the debt secured by the released mortgage, but also an additional amount advanced to the debtor simultaneously with the execution of the new mortgage, the latter mortgage does not operate as an assignment under the statute forbidding preferences by insolvent debtors, although it was executed in part to secure a pre-existing debt, there being no intention to prefer, and in fact no preference, the creditor getting no greater security than he had before.

2. SAME—FAILURE TO LODGE MORTGAGE FOR RECORD WITHIN THIRTY DAYS.—The mere fact that a mortgage executed by an insolvent debtor to secure a debt created simultaneously with its execution is not lodged for record within thirty days after its execution does not cause the mortgage to operate as an assignment under the statute, as the statute can not apply to any case unless there was a pre-existing debt. The proviso of the statute that nothing therein " shall vitiate or affect any mortgage made in good 'faith to secure any debt or liability created simultaneously with such mortgage, if the same be lodged for record within thirty days after its execution," applies only where such a mortgage is executed after the debtor has committed some act to which the body of the statute applies, and in such a case the mortgage is valid, notwithstanding the prior involuntary assignment, provided it is lodged for record within thirty days after its execution; but otherwise it is not valid, as against the assignment, and in an action to have the prior act of preference declared to operate as an assignment the proceeds of the mortgaged property must be distributed among all the creditors.

3. DEED TREATED AS MORTGAGE.—Where, simultaneously with the execution of an absolute deed, it was agreed between the parties in writing that the grantor was to effect a sale of the property within two years, and the grantee was not to sell it in the meantime, unless at a profit, which was to be divided between the parties to the transaction, and the grantee was at any time within the two years to deed back the property upon the repayment to him of the purchase price, the deed is to be treated as a mortgage.

O. A. WEHLE FOR APPELLANT.

1. An unrecorded mortgage is good between mortgagor and mortgagee and

Meier v. Flinsbach, &c.

between the mortgagee and attaching and execution creditors of the mortgagor. (Baldwin v. Crow, 86 Ky., 680.)

2. A mortgage given only for a simultaneous loan is not a preference, though it remains unrecorded. (Farmer v. Hawkins, 79 Ky., 182.) See Terrell v. Jennings, 1 Met., 455; O'Neil v. Miller, 2 Bush, 295; Heidrich v. Silva, 89 Ky., 423; Brooks-Waterfield Co. v. Staton's Adm'r, 79 Ky., 176.

3. A transfer claimed to be a preference must be attacked as such directly in the petition. It can not be attacked by proof, when the petition attacks another transaction. (Napper v. Yeager, 79 Ky., 241; Fuqua v. Ferrell, 80 Ky., 69; Southworth v. Casey, 78 Ky., 397.)

4. A mortgagee in bad faith within the meaning of the preference act is one who assists the debtor in preferring other creditors. (McCann v. Hill, 85 Ky., 581; O'Neil v. Miller, 2 Bush, 280; Southworth v. Casey, 78 Ky., 397.)

5. A deed for an adequate price without any agreement of the grantor to refund the price nor of the grantee to reconvey does not become a mortgage by an agreement of the grantee to pay to the grantor the profit of a resale. Such agreement makes the sale a conditional sale and raises a trust in the profits. (Holmes v. Grant, 8 Paige, 243; Honore v. Hutchings, 8 Bush, 695; Ogden v. Grant, 6 Dana, 473; Macauley v. Porter, 71 N. Y., 178.)

6. Such a deed will certainly be considered as a deed and not as a mortgage within the meaning of the recording laws between the grantee and a stranger. (Macauley v. Porter, 71 N. Y., 178.)

KOHN, BAIRD & SPECKERT AND GEO. L. EVERBACH FOR APPELLEES.

1. Theodore Schwartz & Co. were insolvent. (Commonwealth v. Schwartz, 13 Ky. Law Rep., 929.)

2. If the act complained of was a preference, then the intent to prefer is plain in this case. (Grimes v. Grimes, 86 Ky., 511; Hoffman v. Brungs, 83 Ky., 406; Terrell v. Jennings, 1 Met., 452; Drake v. Ellman, 80 Ky., 434.)

3. The transfers to Robert Meier were mortgages. (Pomeroy's Eq. Jur., sec. 1195; Jones on Mortgages, vol. 1, secs. 264, 266, 274, 271 and 279; Am. and Eng. Ency. of Law, vol. 15, p. 783 and notes; Skinner v. Miller, 5 Litt., 85; Bright v. Wagle, 3 Dana, 253; Edrington v. Harper, 3 J. J. Mar., 354; Honore v. Hutchings, 8 Bush, 687; Oldham v. Healey, 2 J. J. Mar., 113; Blanchard v. Kenton, 4 Bibb, 457; Murphy v. Trigg, 1 Mon., 72; Stapp v. Phelps, 7 Dana, 296; Bright v. Taylor, 3 Dana, 252; Perkins v. Dye, 3 Dana, 170.)

4. The lien of creditors, under the act of 1856, relates back to the time of the commission of the preference and overreaches subsequent liens. (Shouse v. Utterback, 2 Met., 53; Givens v. Gordon, 3 Met., 539; Drake v. Ellman, 80 Ky., 438.)

Meier v. Flinsbach, &c.

5. An unrecorded mortgage is ineffectual against creditors acquiring a right before notice. (Helm v. Logan, 4 Bibb, 78; Graham v. Samuels, 1 Dana, 166; Stephens v. Barnett, 7 Dana, 258; Bank of United States v. Huth, 4 B. Mon., 450; Alexander v. Smith, 2 Duval, 518.)

6. The equity of creditors, under the act of 1856, is superior to that of the holder of an unrecorded mortgage. (Hildeburn v. Brown, 17 B. Mon., 782.)

7. If the recipient of the preference assists in procuring it or is guilty of fraud, he is prevented from prorating his claim. (McCann v. Hill, 85 Ky., 574; Southworth v. Casey, 78 Ky., 397; O'Neil v. Miller, 2 Bush, 291; White v. Graves, 7 J. J. Mar., 523.)

8. An agreement not to record a mortgage is an actual fraud. (Lehman v. Van Winkle, 8 South. Rep., 870; Hildeburn v. Brown, 17 B. Mon., 782.)

9. The proviso of the act of 1856, art. 2, sec. 1, chap. 44, Gen. Stats., brings mortgages given for simultaneously created debts within the operation of the statute as preferences, unless recorded within thirty days and is made in good faith. (Terrell v. Jennings, 1 Met., 452; McCann v. Hill, 85 Ky., 574; Farmer v. Hawkins, 79 Ky., 182.)

10. A mortgage may be good in part and a preference in part. (Whitaker v. Garnet, 3 Bush, 402.)

11. A mortgage operating as a preference can be attacked any time within six months after it is recorded. (Sec. 2, art. 2, chap. 44, Gen. Stats.; Coger v. Stewart, 78 Ky., 59.)

12. The object of pleading in actions brought under the act of 1856 is to compel the surrender of property for equal distribution among the creditors, and it is the last transfer that must be attacked to accomplish this purpose. (Fuqua v. Ferrell, 80 Ky., 69.)

JUDGE HAZELRIGG DELIVERED THE OPINION OF THE COURT.

Theodore Schwartz and Frederick Janssen were members of the late banking house of Theodore Schwartz & Co., at Louisville, Ky. Janssen held the legal title to a block between Twenty-sixth and Twenty-seventh streets and Broadway and Elliot avenue, known as the "West End" property, and Schwartz held the title to the "Christy Woods" property, consisting of some thirty-eight acres of land in the suburbs of the city. Both pieces were in fact the property of the firm.

In the cyclone of March, 1890, a tobacco factory of the firm was badly damaged, and in order to rebuild it Janssen sought his friend, the appellant Meier, a Cincin-

nati tobacconist of means, then temporarily in Louisville, and offered to sell him the "West End" property. After some discussion, the trade was consummated at the price of fifteen thousand dollars. Meier went home, and Janssen sent him a deed reciting a consideration of $24,225 cash, giving as a reason that the firm owned other property in the neighborhood, and that the recitation of a lower consideration would depreciate that property. During the trade Meier proposed that if he should resell the property at a higher price he would pay Janssen the profit. And it was agreed that the deed was not to be recorded, the reason assigned being that if they found a purchaser soon, as was expected, this arrangement would dispense with the necessity for an extra deed. Meier sent the money by checks on the Merchants National Bank of Cincinnati, payable to Janssen, who indorsed them to the firm.

At the time of this transaction, and indeed for years before, Schwartz & Co. were hopelessly insolvent, but this was wholly unknown and wholly unsuspected. Until in the spring of 1891 none stood higher than the members of this firm in the social and business circles of Louisville and elsewhere. As conceded by counsel for the appellees, " they had the absolute confidence of the public, because of their supposed conservative methods." Their assets were showy, consisting of valuable real estate. Their liabilities were unknown, and supposed to be insignificant.

In December following this alleged sale, Schwartz wrote Meier at Cincinnati that they were again in need of money, and that he wanted to sell him the "Christy Woods" property. Meier was in Louisville shortly afterwards, and at first declined to buy any more real estate, but to accom-

modate Schwartz finally agreed to take that property at twenty-two thousand dollars provided he would take in the "West End" property at the price he had paid Janssen for it. This Schwartz agreed to do. The unrecorded deed to the "West End" property was then surrendered, and the sum of seven thousand dollars paid in cash. On December 19, 1890, a deed was made to Meier by Schwartz and wife, which was at once recorded in the proper office. The recited consideration was twenty-eight thousand dollars, as it was said that it would be easier to sell the property at its real worth if the price was so fixed. It was also agreed in writing that Schwartz was to effect a sale of the property within two years, and Meier was not to sell it in the meantime, unless at a profit, which was to be divided between the parties to the transaction. Meier was to deed back the property to Schwartz or to any one whom he might designate, within the two years, upon being repaid the $22,000 and interest, less any rent received by him.

On March 19, 1891, Schwartz & Co. made a deed of assignment of their property for the benefit of all their creditors, and on the following day the appellees, Flinsbach and others, brought this suit to set aside a number of conveyances of real estate made by the firm and its members to sundry persons, upon the ground that they were made in contemplation of insolvency and with the design to prefer certain creditors to the exclusion of others. Among the conveyances so attacked was that of Schwartz and wife to the appellant, Meier, of December 19, 1890, and with this only we have to do on the appeal.

The chancellor, in an interesting opinion, held that the grantors were, on December 19th, and indeed long before,.

hopelessly insolvent and knew it. That the pre-existing debt, satisfied by the conveyance of December 19th, was created in March, 1890. That both these conveyances were mortgages in fact, though conditional sales in form. That the mortgage in March, while good between the parties without being recorded, was not good under the act of 1856 against creditors, because not recorded within thirty days after its execution. That Meier occupied, therefore, the position of an unsecured creditor, "and hence a payment to him of a pre-existing debt, thus not secured, must be considered as the payment of an ante-cedent, unsecured debt, and hence within the statute."

In this conclusion we have not been able to agree with the learned chancellor. A careful reading of the statute, we think, will show that it can not be applied either to the mortgage of March or of December. It goes without argument that the purpose of the act was to inhibit a *debtor*—thus assuming the existence of a debt—from preferring one creditor over another.

The relation of debtor and creditor is assumed in the statute itself, and the relation must exist before the statute can be applied. The debt which the insolvent debtor can not give preference to, by a sale, mortgage, assignment, etc., is a *pre-existing* debt. The preference of the debtor to pay or secure a pre-existing creditor in contemplation of his impending insolvency is the act denounced by the statute. This can not occur when the creation of the debt and the execution of the instrument securing that debt are cotemporaneous or simultaneous acts.

The act of Schwartz & Co., or of Janssen for them, in mortgaging the West End property in March and simultaneously getting the sum of $15,000, is not an act either

preferring a pre-existing creditor or paying or securing a pre-existing debt. The act of Schwartz in mortgaging the Christy Woods property, it is true, secured a pre-existing debt to the extent of $15,000, but the act of preferring or the intent to prefer is wholly lacking. . The creditor got nothing he did not have before, and was therefore not preferred. Certainly not to the exclusion in whole or in part of other creditors.

The chancellor seems to have found his trouble in an attempt to apply the latter part of the statute under consideration to the case at hand, and it is in this attempt that he, as well as counsel for the appellees, fall, as we think, into error. After providing in the body of the section that every sale, mortgage, etc., made by a debtor in contemplation of insolvency and with the design to prefer one or more creditors to the exclusion of others, shall operate as an assignment, the section concludes with this proviso : " But nothing in this article shall vitiate or affect any mortgage made in good faith to secure any debt or liability created simultaneously with such mortgage, if the same be lodged for record within thirty days after its execution." (General Statutes, chapter 44, article 2, section 1). Now certainly it would seem self-evident that before trying to apply this proviso we should first find a case to which the body of the section can be applied.

In order to hang a thief you must first catch him, as " catching comes before hanging." In order to apply this proviso you must first find a case in which an insolvent debtor, or one in contemplation of insolvency, has made a mortgage or sale, etc., with the design to prefer one creditor to another.

If a given case have not the elements called for in the body of the act, we may rest assured that an attempt to apply the proviso will be a misfit. With the essential conditions of the statute in question ascertained to be inapplicable to the mortgages now under investigation, we could safely stop short of discussing the state of case which the statute, in its proviso, is said not to vitiate or affect. It is enough to know that the statute does not apply to the state of case under investigation. The act of Schwartz in making the December mortgage was not a preferential act in the meaning of the statute; nor was the act of Janssen such an act in making the mortgage of March, 1890. But if we may so divert, let us see what is meant by the latter part of this section. We think it is simple and easy of application.

First, we must know that the mortgage mentioned in the body of the section, that is, the one denounced as a preferential act, is not the mortgage mentioned in the proviso which is created simultaneously with the debt secured by it. The one is exactly what the other is not. The one is a preference, the other not. How then was it thought necessary to say the former shall not affect or vitiate the latter if recorded within thirty days? which is the same thing as saying that the former shall vitiate or affect the latter unless so recorded. Under the operation of the statute, by the execution of the prohibited mortgage or sale, a transfer of all the property and effects of the debtor is made to his creditors and for the benefit of all alike, provided, however, that notwithstanding such legal assignment, the transfer is not to overreach a mortgage made in good faith to secure a debt created simul-

taneously with such mortgage if the same be lodged for record within thirty days after its execution.

The preferential act, or, so to speak, the act of bankruptcy, operates necessarily not backward, but instantly and forward. After committing such an act a man may still sell his property, and if the purchaser buys it in good faith he is protected; and the bankrupt may still mortgage his property in good faith for a consideration simultaneously received, and this transaction is protected if the mortgagee puts his mortgage to record within the time prescribed, but if he pockets his mortgage, then the equity of the legal assignees, the creditors to whom the effects of the bankrupt have been transferred under the statute by virtue of the preferential act of the debtor, overreaches the equity of the negligent mortgagee. Not only is the after-given mortgage thus overreached unless recorded, but a mortgage which is given to secure even in part only a pre-existing debt sets the statute into operation; although it may also secure a debt simultaneously created therewith, it must be recorded within the time prescribed else the mortgagee is not protected or secured as to any part of his debt. If such a mortgage be recorded in time, the mortgagee's equity is prior to that of the general creditor to the extent of his simultaneously created debt.

In the case under consideration, we have a negligent mortgagee who failed to put his mortgage on the record after getting it in March, 1890. But where is the antecedent preferential act of the debtor which is to sweep his estate into hotch-potch for the benefit of his creditors? So far as is shown by the record the first act of the insolvent firm, or any of its members, coming within the

condemnatory provisions of the statute, was on March 12, 1891. Then, for the first time, was the statute against preferences set in motion, and the rights of the appellant secured in good faith long before that date are not to be affected by it. He is entitled to have his debt paid in full, and the judgment is reversed, with instructions to enter an order to that effect.