## Fairbanks, Morse & Co. v. Madisonville Savings Bank, et al.

(Decided December 16, 1910.)

### Appeal from Hopkins Circuit Court.

1.   Debtor and Creditor—Equity Cases—Judgment—Conclusions of Chancellor—Weight Given Thereto.—In equity cases this court will give judgment according to the truth of the matter as it appears to it from the record, but we give some weight to the finding of the chancellor and do not disturb his conclusions on the facts where on all the evidence the truth of the matter is doubtful.

2.   Struggling Debtor—Consideration Given.—A debtor who is struggling to maintain his credit in good faith may, without violating the statute, pay money in the ordinary course of business, to pro-

tect his credit, where he has reasonable grounds to believe that he can pull through. The same rule must be applied to a corporation as to an individual. The credit of a trading corporation must be kept up, and it is not required to suspend business when it finds itself seriously involved, if its managing agents have reasonable grounds to believe it can meet all its obligations.

3. Statute—Liberal Construction.—The statute must not receive so rigorous a construction as to deprive struggling debtors of an opportunity to pay all their creditors, and save themselves from ruin, when the facts show they acted with no intention to prefer, and had reasonable grounds for their course of business.

GORDON & HOPEWELL and J. A. JONSON, for appellant.

GIBSON & KINCHELOE, J. L. ROGERS and WALKER WILKINS, for appellee.

## OPINION OF THE COURT BY JUDGE HOBSON—Affirming.

The Co-operative Canning Company, of Nortonville, Ky., made an assignment for the benefit of its creditors on December 18, 1909, and this suit was brought by some of the creditors under section 1910 Ky. Stat., charging that certain payments had been made by the corporation to the Madisonville Savings Bank and to the First State Bank of Nortonville in contemplation of insolvency, and with the design to prefer them to the exclusion of the other creditors. An answer was filed by the defendants traversing the allegations of the petition. A trial was had. The circuit court dismissed the petition and the plaintiffs appeal.

The appeal raises simply a question of fact. We have read the record with care. In equity cases this court will give judgment according to the truth of the matter as it appears to it from the record; but we give some weight to the finding of the chancellor, and we do not disturb his conclusion on the facts where on all the evidence the truth of the matter is doubtful. The Canning Company began business in 1908; it had a paid in capital of about $4,000.00. At the close of the season of 1908, it owed $1,600.00, and it had about $800.00 of material and the like on hand. They borrowed from the First State Bank $1,600.00 and paid the debt. The loss that year they supposed to be due to the fact that they did not have enough tomatoes to keep the plant running regularly, so the next year they made contracts for a much larger acreage, and supposed that they would be all right. The company was organized by a number of

farmers, and was managed by them. About the first of August they borrowed $2,000.00 from the Savings Bank to pay for cans and gave two notes each for $1,000.00, due in sixty and ninety days, with the understanding that these notes would be paid out of the proceeds of the tomatoes they sold. They canned the tomatoes, sold them and paid the two notes about the time they matured. The State Bank advanced to them money to pay their hands until they could get their returns from the tomatoes, and in this way they owed it $500.00 in addition to the $1,600 they had borrowed the year before. This money they paid to it in November, the last payment being made in the latter part of the month, and after all the tomatoes had been sold. They had in bank when the assignment was made $32.00. They had their plant in good order, which had cost them $4,700.00 and about the same quantity of supplies as they had left over from the previous season, $800.00. So that if all their assets had been worth par they would have amounted to $5,500.00. They owed as shown by the report of the assignee afterwards made, $3,500.00, and the assets when sold by the assignee brought $600.00, which, as shown by his record, is less than two-thirds of the appraised value of the land. The farmers from whom they had bought tomatoes had not in the main been paid on December 1st, and a meeting of the stockholders was called to raise the money to pay the farmers. But some of the stockholders declined to help raise it, and this proposition falling through, the assignment followed.

It is evident from all the proof that those managing the Canning Company thought they were going to come out ahead until the tomatoes were sold. Their losses seem to have come from the fact that their goods brought less than they anticipated, and a drought cut short the yield of their crops so that they had less goods to sell than they expected. The payments were all made by the usual course of business, and were evidently made by the directors upon the assumption that the money would be raised as it had been the year before to pay the farmers for their tomatoes. Nobody seems to have anticipated insolvency, and it is very clear from all the evidence that there was no actual intent to prefer one creditor to another. Even after the assignment was made, if the property of the company could have been sold for anything near its cost, the creditors would not have suffered. It is true it was afterwards sold at a great sacrifice, but

this may have resulted from local causes. A debtor who is struggling to maintain his credit in good faith may, without violating the statute, pay money in the ordinary course of business to protect his credit, where he has reasonable grounds to believe that he can pull through. A great many men when seriously involved thus extricate themselves from their difficulties, and save their property. The same rule must be applied to a corporation as to an individual. The credit of a trading company must be kept up, and it is not required to suspend business when it finds itself seriously involved, if its managing agents have reasonable grounds to believe it can meet all its obligations. A less stringent rule has been applied to the payment of money in the ordinary course of business than where mortgages have been made to secure a pre-existing debt, although a payment of money will be adjudged within the statute, if made in contemplation of insolvency with the intent to prefer one creditor to another. In Lewis v. Zinn, 93 Ky. 628, the assignor had only $12,000.00 of assets, and his debts amounted to $16,000.00. The court refused to hold the transaction within the statute. The statute must not receive so rigorous a construction as to deprive struggling debtors of an opportunity to pay all their creditors and save themselves from ruin, when the facts show they acted with no intention to prefer, and had reasonable grounds for their course of business. On the whole case we are unwilling to disturb the conclusion of the learned circuit judge on the facts.

Judgment affirmed.