# Union Trust and Savings Co. of Maysville, Ky., v. Taylor, et. al.

(Decided February 10, 1911.)

## Appeal from the Mason Circuit Court.

1. Mortgage—Insolvency—Preference of Creditors.—A mortgage will be held within the act of 1856 where the mortgagor knew what he owed and what property he had, and a man of ordinary prudence situated as he was would have known he was insolvent, and would have contemplated that the transaction would prefer some of his creditors to the others.

2. Same.—Where a debt is secured by a mortgage not within the statute which had not been recorded, a subsequent mortgage is good as to this debt, although within the statute as to other debts.

3. Same.—Where a debtor made a mortgage for $40,000, executing mortgage bonds to a trust company which furnished the money with which he paid certain of his creditors, preferring these creditors to others, the creditors may be required to pay back the money they received, and when this is done the mortgage bonds should be enforced.

4. Same.—Where creditors have received money from the debtor, the payment of which is held within the statute, instead of their paying the whole amount into court they may be required to give bond to pay any sum in their hands over and above their pro rata of the estate on a distribution.

WORTHINGTON & COCHRAN for appellants, Union Trust & Savings Co., First National Bank of Maysville, Ky., Mary R. Wells, Martha Bramel and W. F. Taylor.

GARRETT S. WALL, of counsell.
POWER & BABBITT and HEFLIN & GRANNIS for appellees.

RESPONSE TO PETITION FOR REHEARING AND EXTENDED OPINION OF THE COURT BY CHIEF JUSTICE HOBSON.

It is insisted by counsel in the petition for rehearing that the opinion is in conflict with a number of previous decisions of the court. Counsel quote the following sentence from the opinion:

"The letters of Marshall, his will and the other proof in the record, leave no doubt in our minds that he did not in fact contemplate being insolvent, or in fact intend to prefer the creditors whom he paid off on May 6th, to his other creditors." (See Union Trust Co. Etc. v. Taylor, 139 Ky. 283.)

They insist that under all the prior decisions of the court, this effectually settles the question that the mortgage of May 4th was not such a transfer as operated as an assignment under the act of 1856. But this sentence is not to be dissociated from the remainder of the paragraph of the opinion in which it occurs. Counsel close their quotation in the middle of a sentence, when the next sentence and those that follow it were plainly written to qualify the words which counsel quote. What we tried to say was that a man could not prevent the application of the statute by shutting his eyes to the truth, and refusing to see what was patent. The operation of the statute does not depend upon what is the secret working of the assignor's mind. His mental processes do not control the statute. When a man knows what he owes, and knows what property he has, and a man of ordinary prudence situated as he is would know that he is insolvent, then in the contemplation of the statute, he knows that he is insolvent. In other words he is charged with knowing what a man of ordinary prudence, situated as he is, would know. In like manner, when he makes a transfer when he is insolvent and when a man of ordinary prudence situated as he is would know that the necessary effect of the transfer is to prefer one creditor to another, he will be presumed to intend that which a man of ordinary prudence would have contemplated under like circumstances, or to put it in other words, if a man of ordinary prudence under like circumstances would know that the transfer would prefer one creditor to the exclusion of others, then the debtor is held to know that the transfer would so operate, and knowing that this would be the operation of the transaction, he is held to have intended the natural and necessary effects of his own acts. Counsel quote from Terrill v. Jennings, 1 Met. 445; Millet v. Pottinger, 4 Met. 213; Hampton v. Morris, 2 Met. 336; Heidrich v. Silva, 89 Ky. 427, and insist that these cases hold that the debtor must actually know that he is insolvent, and actually design to prefer one creditor over another. But no such inference may fairly be drawn from these opinions. On the contrary, the court has in a number of cases laid down the standard that he must know what he has reason to know, and must contemplate what he has reason to contemplate. Thus in Thompson v. Heffner, 11 Bush, 360, it was contended that the debtor did not know that he was insolvent because he did not know that

he would have to pay certain debts on which he was surety. After discussing the matter the court said:

"We therefore conclude that he did not know he was insolvent, unless the circumstances were such that he ought to have regarded it as reasonably certain that he would be called upon to pay the debts on which he was surety for his son, William."

Again in McKee v. Scobee, 80 Ky. 128, where it was insisted that the grantor did not know he was insolvent, the court said:

"Whether he knew at the time of the sale he was insolvent must be determined by the facts and circumstaces as they are presented."

In Allen v. Dillingham, 104 Ky. 808, it also said:

"Now it is contended for the defendants that Mr. Dillingham did not make the conveyance in contemplation of insolvency, nor with the design to prefer Allen's Sons to the exclusion either in whole or in part of his other creditors. That Mr. Dillingham did not believe at the time of the conveyance that he was then insolvent is in no sense decisive of this point."

In Walker v. Davis, 19 R. 1314, the court said:

"There is but one conclusion to be reached from this record, and that is that Davis was insolvent when he executed the mortgage to Walker & Sengstak; and, crediting Davis as being a man of fair judgment, he could not have failed to know at that time that he was insolvent."

"In Northern Bank vs. Farmers Bank, 111 Ky. 350, the debtor Moore had made a deposit in bank of $4,557.75, as stated in the opinion, "in the usual course of business without actual intention on the part of Moore to give it a preference over his other creditors." Holding this transaction within the statute the court said:

"It has been held that where a debtor makes a transfer or payment to one of his creditors with the knowledge that he is insolvent, the design to prefer will be presumed, unless the accompanying circumstances show plainly that there was no such intention. This rests upon the presumption that one designs the usual result of his act. But the presumption is not absolute. The intent of the debtor is the essence of the statute. Still the purpose of the statute would be defeated if it were denied application simply because the debtor did not in fact contemplate the necessary effect of his act. If Moore had handed the check for $4,557.75 to the bank, and directed

the proceeds collected and credited on this note, undoubtedly the transaction would have been within the statute. He cannot be allowed to do by indirection the same thing without the same result. His act not only put it in the power of the bank, but imposed on it the necessity of applying the proceeds of the check to the payment of the note; for, if it had failed to do this, it would have released the surety in the note, and, after paying out the money, it would have had nothing to look to for its debt but the personal obligation of Moore, who was insolvent. The aim of the statute is to secure equality between creditors, and its just purpose can not be defeated in such a way."

The aim of the statute being to secure equality between creditors, what the debtor's mental attitude may be is not so material under the statute as the real character of the transaction. The law no where holds out a premium for supineness and negligence; its standard is ordinary care. It is not usually easy to show what is in fact going on in a man's mind; and so in cases of this sort, it is a reasonable rule to apply the statute, where under the facts known to him, a reasonable man would know that he was insolvent, and would know that the effect of his act would be to prefer one creditor to another. This is the rule applied in the opinion and as shown it has been often applied by this court before.

2. Upon a reconsideration of the matter the court is of opinion that the mortgage given the Trust Company on January 4, created a valid lien to secure the debt of $2,000.00, and that as to this debt of $2,000.00. the mortgage of May 4, was not within the statute. The opinion heretofore delivered is modified as indicated to the effect that as the debt of $2,000.00 was secured by the prior mortgage, the mortgage of May 4, was not invalid as to this debt of $2,000.00. (Meyer v. Flinsbach, 95 Ky. 139; Foley v. Foley, 108 S. W. 270.)

3. The circuit court by its judgment adjudged (1) that the mortgage of May 4 for $40,000.00 was within the statute, and operated as an assignment except to the extent of $4,171.70 retained for Mrs. Ambler; (2) that the following payments made by Marshall on May 6 and May 7 were within the statute; $16,822.50 to the Trust Company, -10,150.75 to the First National Bank of Maysville, $400.00 to the Union Trust Company, $2,043.00 to W. F. Taylor, $1,585.00 to Martha A. Bramel, $6,108.35 to Mary R. Wells, $2,161.65 to James N. Kirk, $3,000.00

to Logan Marshall, and each of these parties was order-ed to pay to the receiver the sum so received, with inter-est from the time he received it; (3) that the Trust Com-pany might present its claim for $36,000.00 with interest, (the mortgage to secure which was set aside) as a gen-eral claim against the estate of R. T. Marshall; that the .First National Bank might present its claim of $4,000.00, after having first turned over the collateral and the money collected on same to the receiver; that the various creditors when they had paid in the amounts which they were ordered to pay in might present their original claims against the estate, and come in pro rata in the general distribution of the estate. Marshall's debts amounted .to about $85,000.00. By the judgment of the court, the creditors who had gotten the money were re-quired to bring it back, and the Trust Company and the Bank were also required to present their claims amount-ing to $40,000.00, although the securities which they held were set aside as within the statute. The effect of the judgment was to increase Marshall's debts from $85,-000.00 to $125,000.00, and to add $36,000.00 to the debt of the Trust Company against Marshall, and $4,000.00 to the debt of the bank against Marshall, and to require them to come in pro rata with the other creditors on these sums. This was wrong. When the creditors who had re-ceived money, where the payment was within the statute, are required to pay the money back to the receiver with interest, or to secure it to him, the other creditors of Marshall cannot complain, and the bonds secured by the mortgage of May 4, should be paid in full out of the pro-ceeds of the land if the price of the land is sufficient for this purpose, and if insufficient, so far as it will pay them. The Trust Company should not be required to prove up $36,000.00 as a general claim. It should only be required to prove up as a general claim its claim for the money the payment of which was within the statute.

4. The Trust Company, the First National Bank, Mary R. Wells, Martha A. Bramel, W. F. Taylor, and J. N. Kirk superseded the judgment. By the opinion de-livered herein, the judgment against the Trust Company was reversed, also the judgment against the First Na-tional Bank as to the $4,000.00 collateral, and the debt which it secured; but the judgment against the bank as to the payment into court of $10,150.75, and the judg-ments against Wells, Bramel, Taylor and Kirk were af-firmed. A judgment for damages was then entered

against all the appellants except the Trust Company and the First National Bank. Upon a reconsideration of these matters we have reached the conclusion that in view of the fact that the land had been sold, and the other facts shown by the record, it was inequitable to require these parties to pay into court the whole of the money they had received, and then to require them to draw back from the receiver their pro rata, when complete justice will be done if they pay into court all that they received with interest over and above what is coming to them on a distribution of the estate. The court should have entered a judgment requiring them to execute a bond within thirty days to the receiver conditioned for the payment of the money to the receiver when ordered by the court, and provided that in case they failed to execute the bond, an execution might issue for the money. The court should also refer the case to a commissioner to report the debts, the estate for distribution, and what amount is coming to each creditor; and on the confirmation of this report, he should order each of the appellants who have given the bond above referred to, to pay into court the sum which is in his hands over and above his proper pro rata. In this way the fund will bear interest until a distribution is made, the loss to all the creditors will be less, no injustice will be done to any of them, cost will be avoided, and no undue hardship will be placed upon the creditors who received the money, the payment of which is now adjudged within the statute.

The opinion is modified and extended as above indicated. The judgment as to all the appellants is reversed, and the cause remanded for a judgment and further proceedings consistent here with. The petition for rehearing in other respects is overruled.