Opinion of the Court by
Chief Justice Hobson—
Affirming on the original and reversing on the cross appeal.
This action was instituted by C. P. Cecil, et ah, as. creditors of George Cogar attacking under section 1910,' Kentucky Statutes, certain payments made by him to the Citizens National Bank of Danville on the ground that the payments were made by him in contemplation of insolvency, and with the design to prefer the bank over his other creditors. By., an amended petition a payment made to the Linen Thread Company was attacked on the same ground. The allegations of the petition were denied. The proof showed practically these facts: George Cogar had been in business in Danville for many years as a buyer of farm products such as hemp, wheat, corn, oats, etc. He had done a large business on a very small capital, his chief assets apparently being the general confidence of the people in his integrity and correctness. He would buy crops and give the farmers a check. When these checks were presented to the bank, the bank. would decline to pay them except as Cogar directed and when he would put money in the bank he would indicate what checks were to be paid. In this way the farmers frequently held checks for several months. For several years previous , to the year 1909, he had been acting as the undisclosed agent of the American Trading Com-, pany, buying hemp for it as its agent, but in his own name. In this way he bought a large quantity of hemp. In the summer of 1909 he discounted at the bank a note of the Trading Company for $10,000, and the proceeds were placed to his credit and checked out. On October 1, 1909, he gave a check for $1,500 to the Linen Thread Company which is the payment attacked as to it. Cogar had shipped off a large quantity of hemp and he in *846 structed Ms bookkeeper as the checks came in for the hemp to turn them over to the Citizens National Bank. The bookkeeper did this, the deposits beginning ón October 7, 1909, and continuing to December 24, 1909, being thirteen in all and aggregating $18,377.82. The book-' keeper who made the deposits being asked to whom this money belonged and on whose indebtedness it was paid, answered as follows :
“That money was paid to the Citizens National Bank first, to take up a note of $10,000 and interest with the American Trading Company, the balance to apply to an ■overdraft of Mr. Cogar’s, according to direction from Mr. Cogar to me. This overdraft is for hemp.”
1 “To whom did these various sums belong?”
1 “A. They belonged to the American Trading Com-
pany; they were from proceeds of hemp shipments.”
“Q. And whose indebtedness was that $10,000 note due the Citizens National Bank?”
“A. The American Trading Company.”
Cogar had a stroke of paralysis November 4, which in time affected his mind and not long thereafter a committee was appointed to take charge of his affairs. The circuit court dismissed the plaintiff’s petition against the bank, holding that the payments to it were not within the statute; but adjudged that the payment to the Linen. Thread Company of $1,500 was within the. statute and operated as an assignment of all of Cogar’s property for the benefit of all his creditors. From this judgment, the plaintiffs appeal in so far as. it dismissed their petition against the bank, and the committee of Cogar has prosecuted a cross appeal from so much of the judgment as. adjudged the payment to the Linen Thread Company to be a preference.
We will take up first the question as to the payments to the bank. The statute, among other things, provides:
“Every sale, • mortgage, or assignment made by debtors, and every judgment suffered by any defendant, ■ or any act or device done or resorted to by a debtor, in contemplation of insolvency and with the design to pre-' fer one o.r more creditors to the exclusion,' in whole or in part, of others, shall operate as an assignment and transfer of all the property and' effects of such', debtor, and1 shall inure to the benefit of all his creditors.” *.*,.*
■ Although’ Cogar’was-the’ undisclosed, agent of the American Trading Company, persons who dealt with him. *847 upon learning that lie was its agent could look to Ms principal for their debts. The sum of the matter was that he was buying hemp for the Trading Company giving checks for the hemp and paying the checks out of the money of the Trading Company as it was remitted to him. The bank to whom the overdraft had been made for hemp had a right to look to the Trading Company for this money; for in making the overdraft, Cogar had acted as its agent in paying for the hemp which he had bought as its agent. And so when Cogar received the checks from the Trading Company it was the money of the Trading Company in his hands as agent which it was his duty to apply to the payment of the debt of the Trading Company. When as agent he applied his principal’s money to the payment of his principal’s debt, he violated no duty which he owed his creditors. His creditors had the right to demand that his property should be applied to the payment of their debts but they had no right to demand that he should apply to the payment of their debts the money of his principal that had been sent to him to pay its debts. When he paid his principal’s money upon his principal’s debt, it was not a transfer of any of his property, or an act or device in contemplation of insolvency with the design to prefer one or more creditors to the exclusion in whole or in part of others.
It is insisted that this defense is not presented by the answer. The petition alleged that the payments in question were made in contemplation of insolvency and with the design to prefer the bank to his other creditors. The allegations of the petition were traversed. The burden was then upon the plaintiffs to make out their ease. To succeed in the action they had to establish two propositions : (1) That the payments were made in the contemplation of insolvency; (2) that they were made with the design to prefer the bánk to Cogar’s other creditors. When they proved that the payments were made by Cogar when he was insolvent, this did not make out their case, and when the proof as to the payments showed that they were not made to prefer the bank to his other creditors, the plaintiffs failed to make out their case. When a transaction is attacked under the statute all the facts of the transaction may be shown, and the court must decide from all the facts whether the transaction was made in contemplation of insolvency and with the design of the debtor to give one of his creditors a preference *848 oyer others. In Deweese v. Deweese, 121 Ky., 747, the plaintiff alleged that a certain conveyance was made in contemplation of insolvency and with the intention of preferring the grantee to the grantor’s other creditors. The allegations of the petition were denied. The defendant proved that the land.conveyed was a homestead and relied on this fact to show that the conveyance was not preferential. It was insisted that the evidence conld not be considered under the traverse but that the facts should have been specially pleaded. Holding the plea good, the court said:
“It was unnecessary for the defendant in his answer to do more .than deny the allegations of the petition. Under the general denial of the allegations of the petition he could prove facts showing that the deed was not made fraudulently in contemplation of insolvency and with a design to prefer one creditor to another. The answer putting in issue the allegations of the petition, the burden was on the plaintiff to make out his case; and, when it was shown that the property conveyed was exempt from execution, a state of facts was made out which showed that the conveyance was not.within the statute. The rule is that it is unnecessary to plead evidence. It was, therefore, unnecessary for the defendant to amend his answer. The proof which he made was competent under the general issue to show that the deed was not a fraud on the other creditors, and was, therefore, not within the statute.”
It remains to determine whether the payment of $1,500 to the Linen Thread Company on October 1 was within the statute. Cogar owed that company $3,250. The claim was in the hands of an attorney for collection; he agreed to- allow the term of court to pass' without suit if $1,500 was paid. Cogar paid the $1,500 upon this condition telling the attorney at the time that he had a counterclaim against the Linen Thread Company which he would assert as to the balance of the claim. The proof leaves no doubt in our minds that, Cogar made this payment just as he had made a number of payments in the last five years for the purpose of preserving his credit and in an effort to save his business. In Union Trust Co. v. Taylor, 139 Ky., 283, where several payments of money were attacked, refusing to apply the statute, we said:
“A payment of money in the usual course of busi *849 ness will not be regarded as a violation of tbe statute, where it is done in good faith and with no intent to prefer one creditor1 to another, but simply in honest effort by the debtor to meet his obligations. Were the rule otherwise, many men who are seriously involved and who by'successful management pay off their obligations and accumulate quite a fortune, would be obliged to suspend business and bring ruin upon themselves. It is true a payment of money made with the intention to prefer one creditor to another and in contemplation of insolvency is within the statute. But a payment of money in good faith by an involved debtor to maintain his credit and preserve his estate is not within the statute, where there is in fact no intention to prefer, and the circumstances show that a preference was not contemplated.”
In Fairbanks Morse Co. v. Madisonville Savings Bank, 141 Ky., 374, refusing again to apply the statute in the case of a payment of money, we said:
“The statute must not receive so rigorous a construction as to deprive struggling debtors of an opportunity to pay all their creditors and save themselves from ruin, when the facts show they acted with no intention to prefer, and had reasonable grounds for their course of business. ”
Again in Union Trust Co. v. Taylor, on petition for re-hearing, 142 Ky., 183, we said:
“The operation of the statute does not depend upon what is the secret working of the assignor’s mind. His mental processes do not control the statute. When a man knows what he owes, and knows what property he has, and a man of ordinary prudence situated as he is would know that he is insolvent, then in the contemplation of the statute, he knows that he is insolvent. In other words he is charged with knowing what a man of ordinary prudence, situated as he is, would know. In like manner when he makes a transfer when he is insolvent and when a man of ordinary prudence situated as he is would know that the necessary effect of the transfer is to prefer one creditor1 to another, he will be presumed to intend that which a man of ordinary prudence would have contemplated under like circumstances; or to put it in other words, if a man of ordinary prudence under like circumstances would know that the transfer would prefer one creditor to the exclusion of others, then *850 the debtor is held to know that the transfer wonld so operate, and knowing that this would be the operation of the transaction, he is held to 'have intended the natural and necessary effect of his own acts. ’ ’
There is nothing in the evidence to indicate that Co-gar in making the payment of $1,500 to the 'Linen Thread Company designed to prefer that company thereby to any of his other creditors. He made this payment just as he had made a number of other payments shortly before, and in fact just as he had made other payments for several years to his creditors, with the design of preserving his credit and keeping his business going. But although he did not intend in fact to prefer the Linen Thread Company to his other creditors, still as we have held, the payment is within the statute if a man of ordinary prudence situated as Cogar was, should have known that he was insolvent, and that the necessary effect of the payment would be to prefer one creditor to another. On the other hand if he had reasonable grounds for his course, and did not intend it as a preferential transaction, it is not within the statute. The burden of proof is on the plaintiff. The plaintiff must show either that a preference was designed or that the circumstances were such that the debtor had no reasonable grounds for his course, and should have contemplated that the payment would work a preference. We conclude from all the proof that the plaintiff has not shown this. The question is to be tried not in the light of subsequent developments, but on the proof as to the facts before Cogar at the time of the transaction. The proof shows that he owed in round numbers-$58,000; of this in round numbers $26,000 was a debt of the American Trading Company representing hemp which he had bought, and he had the hemp. The American Trading ■ Company afterwards took possession of it. When we deduct this $26,000 from his total debts, we have a balance of $32,000. He had $15,000 of stock in the American Trading Company of the par value of $100 a share. The only proof in the record as to its value is that it was hypothecated to secure a debt of $7,500 and that banks usually take collateral at from 30 per cent, to 50 per cent, of its value. In the absence of evidence showing the value of the stock at the time we cannot say that Cogar erred if he valued it at par. The burden as we have said, is on the plaintiffs to make out *851 their case. Cogar had $5,000 worth of real estate. He had $6,000 owing him on his hook; he had an interest in' a tobacco warehouse from which his committee after-"wards realized $900. There is no proof in the record as to its value on October 1. These sums foot up nearly $27,000, which would show that his assets were about $5,000 less than his liabilities. But he had another asset which must nqt be overlooked in determining whether he had reasonable grounds for the course which he pursued. It takes years to build up a business. When built up it may be very valuable. It may be destroyed in a very short time if the credit of the owner is not preserved, and when once destroyed, it is often practically impossible to reinstate it. Cogar was doing a large business. He had credit far beyond his means by reason of the confidence of the people in his absolute integrity. What his business was worth we cannot determine from the record, but we cannot say from the record that he was not justified as a man of ordinary prudence in making the payment referred to, to preserve his business. There is testimony in the record that he had a counterclaim against one of his creditors, and the proof in the record leaves it doubtful whether he owed the American Trading Company or that company owed him. He has lost his mind and cannot testify. As the burden of proof is on the plaintiffs we do not see that the plaintiffs have shown that Cogar must have known.that a payment of $1,500 on a debt of $3,250 was a preference of that creditor over others. We are satisfied from the record that if Cogar had not been subsequently paralyzed, but had been able to manage his business as before, no complaint would have been made of the payment of $1,500 to the Linen Thread Company. This court in the cases referred to and in others which preceded them, has drawn a sharp distinction between a payment of money in the usual course of business by a debtor, and the making of a mortgage or a transfer of his property. The reason for the distinction is obvious. One is an act in the usual course of business and the other is not. Thus in the case of Union Trust Company v. Taylor, above cited, the payments of money by the debtor were held not within the statute, while the mortgage which he executed subsequently securing certain of his creditors was held within the statute. We. do not see that the payment attacked here can be distinguished from the payments which *852 were sustained in that case, or in Fairbanks, Morse & Co. v. Madisonville Savings Bank. We, therefore, conclude that the circuit court erred in adjudging the payment to the Linen Thread Company a preferential transfer.
On the original appeal the judgment is affirmed; on the cross appeal the judgment is reversed and the cause ’ remanded for a judgment as above indicated.