## Williams, et al. v. Carter, et al., Trustees.

(Decided June 9, 1925.)

### Appeal from Lincoln Circuit Court.

1. Fraudulent Conveyances—Debtor Making Payments to Maintain His Credit Does Not Create a Preference.—Where a struggling debtor makes payments to maintain his credit until times grow better, with no intent to prefer one creditor to another, but simply in an honest effort to meet his obligations, no preference will be adjudged.

2. Fraudulent Conveyances—Mortgage on Growing Crop Held to Prefer Mortgagee to Other Creditors of Mortgagor.—Mortgage on growing crop operated to prefer mortgagee to other creditors of mortgagor within Kentucky Statutes, section 1910, where mortgagor was insolvent, and mortgage covered all property he had.

3. Fraudulent Conveyances—Mortgage of Growing Crops Within Statute as to Preferences.—Kentucky Statutes, section 1696, exempting crops from execution, attachment or other process, until after first day of October in each year, does not prevent application to mortgage of growing crop of section 1910 relative to preferential sales and mortgages.

GEORGE E. STONE and J. B. PAXTON for appellants.

K. S. ALCORN and P. M. McROBERTS for appellees.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

In September, 1919, W. O. Williams and Herbert Williams purchased from J. Nevin Carter and Ernest Carter, trustees, an 80-acre tract of land in Lincoln county . The consideration was $17,689.80 of which one-third was paid in cash and three notes for the sum of $3,931.29 payable in one, two and three years from date, and secured by a lien on the land, were executed for the balance. The deed contained a precipitating clause, and the purchasers having failed to pay the first note, which was due January 1st, 1921, the vendors brought suit at the May term, 1921, of the Lincoln circuit court to recover on the notes and enforce their lien. No defense being made, on June 8, 1921, personal judgment was rendered against the defendants for the sum of $11,793.87 with interest from January 1, 1921, and the land ordered sold in satisfaction of the debt, interest and costs.

On August 19, 1921, after the entry of the judgment, W. O. Williams executed to the People's Bank a mortgage upon his one-half interest in the crop of tobacco and corn then growing upon the land which had been ordered sold, to secure an indebtedness of about $2,500.00 made up of notes on which W. O. Williams was liable either as principal or surety.

The land was sold under the judgment of November 17, 1921, for the sum of $10,420.80, thus leaving a balance due on the judgment of $2,718.19 and the costs of the action.

This action was brought by the vendors against W. O. Williams and the People's Bank of Hustonville under section 1910, Kentucky Statutes, to have the mortgage

adjudged a preference and declared to operate as an assignment of all Williams' property for the benefit of his creditors. On final hearing the chancellor granted the relief prayed for and Williams and the bank have appealed.

Cases often arise where a struggling debtor makes payment here and there for the purpose of maintaining his credit until times grow better, and as long as this is done with no intent to prefer one creditor to another, but simply in an honest effort by the debtor to meet his obligations, no preference will be adjudged. Union Trust Co. v. Taylor, 139 Ky. 283, 129 S. W. 828; Fairbanks, Morse & Co. v. Madisonville Savings Bank, 141 Ky. 374, 132 S. W. 540. But that is not this case. When the mortgage was executed there was an outstanding judgment against W. O. Williams and Herbert Williams for a large sum. Though W. O. Williams subsequently attempted to qualify his statement he admitted in his deposition taken on cross-examination that both he and Herbert Williams were insolvent when the mortgage was executed and that the mortgage covered all the property he had. He was not able to secure another loan on the property or discharge the indebtedness in any other way. The farm had been ordered sold, and with it his means of livelihood would go. Realizing that he was insolvent he executed the mortgage. This left him without property that could be subjected to debts not covered by the mortgage. Under these circumstances a man of ordinary prudence would necessarily know that the effect of the transaction was to prefer the bank to his other creditors, and our conclusion is that the chancellor did not err in so holding. But the point is made that the mortgage was not a preference, as the property mortgaged consisted of growing crops that were not subject to coercive sale at the time of its execution. It appears that the statute formerly read as follows:

"No crop of any description shall be levied on or sold under execution unless severed from the ground until the first day in October each year, but if the estate of the defendant in which the land is liable to be sold is sold the title to the growing crop may pass by such sale."

In the case of Brewer & Orr v. Cosby, 8 Bush 388, this court held that the mortgage of a growing crop of tobacco by an insolvent debtor when it was not subject

to execution did not operate as an assignment of all the mortgagor's property and effects to his creditors under the act of 1856.  Later on this case was overruled in Blincoe v. Lee, 12 Bush, 358, where Judge Lindsay, speaking for the court, said:

> "The statute provides that a sale, mortgage or assignment coming within its inhibitions shall operate as an assignment and transfer of all the 'property and effects' of the debtor, and it is therefore immaterial whether it be or not subject to execution.  The only question is whether it is subject to the payment of the grantors', mortgagors', or assignors' debts.  The tobacco was certainly subject in equity to the payment of Lee's debts, although it could not have been taken under execution because not severed from the ground."

Afterwards the statute, which is now section 1696, Kentucky Statutes, was amended so as to read as follows:

> "No crop of any description shall be levied on or sold under execution, attachment, or any other legal or equitable proceeding whatever, except attachment for rent, or to secure a mortgage or statutory lien, unless it shall have been severed from the ground, until after the first day of October in each year.  But if the estate of the defendant in the land is liable to be sold, and is levied on and sold, the title to the growing crop may pass by such sale."

The argument is that the purpose of the amendment was to prevent growing crops from being subjected to debt in any manner whatsoever until October 1st in each year, and to change the rule announced in Blincoe v. Lee.  It is certain, of course, that the legislature intended that with the exceptions named growing crops, unless severed from the ground, should not be levied on or sold under execution, attachment, or any other legal or equitable proceeding whatever until the first day of October in each year, but it does not necessarily follow that the purpose of the legislature was to affect the decision in Blincoe v. Lee, and in our opinion it did not have the effect of changing the rule there announced.  The statute does not exempt growing crops from the payment of debt.  Its only effect is to prevent a levy or

coercive sale for a limited period of time.  The language of section 1910 is broad and comprehensive.  It covers every sale, mortgage or assignment made by a debtor in contemplation of insolvency and with a design to prefer one or more creditors to the exclusion, in whole or in part, of others.  In the absence of a statute equally plain, we are not at liberty to ignore the words, ''every sale, mortgage or assignment'' and hold that they do not cover the mortgage of a growing crop, and section 1696, which merely suspends coercive measures for a brief period of time, is not broad enough for that purpose.   An authority in point is Terrell v. Cheatham, 200 Ky. 667, 255 S. W. 262, where a mortgage of growing tobacco was held to be preferential and void.

Judgment affirmed.