## Hoskins, et al. v. Black, et al.

(Decided December 17, 1920.)

### Appeal from Bell Circuit Court.

1. Mortgages—Failure to Execute Note.—A provision in a mortgage to secure the payment of a stated indebtedness which provides that the sum is to be paid four months from date, imports a promise to pay, and though the parties failed to execute a note as provided, the mortgagee is entitled to a personal judgment against the mortgagor in a suit for the consideration.

2. Landlord and Tenant—Rent.—Though there was no writing, as required by Ky. Stats., sec. 470, evidencing the assignment or transfer of a lease for a longer term than one year, where·it is shown that the lease had been considered as cancelled, the assignees who had attorned to the owner, occupied the premises

as tenants at will and were liable for the rent during the period of their occupancy.

3. Landlord and Tenant—Rent.—In a suit instituted by the landlord to collect rent, to which only the original lessees were made parties, it cannot be said those who purchased from the lessee the personalty which was sold, were deprived of their property without due process of law, where they had notice of the suit, were present at the sale, and purchased the property, besides, at the time the suit was filed and the property sold said purchasers were occupying the premises as tenants of the plaintiff, and the rent sued for was for the period covered by their occupancy.

JAMES J. JEFFRIES for appellants.

JAMES M. GILBERT and W. R. LAY for appellees.

OPINION OF THE COURT BY JUDGE QUIN—Affirming.

In November, 1914, John T. Black and his brother Frank leased from J. A. Ingram and wife the lower floor of a building in Pineville. The lease was for a term of one year, with the privilege of a six year extension. A partition divided the room into two parts, one of which was used as a barber shop, the other as a pool room and pressing establishment. The barber shop was owned by the lessees; the pool room was operated by Frank Black and another brother, called "Crit." The rental for the entire space was $70.00 per month, $20.00 of which was apportioned to the barber shop and $50.00 to the pool room.

In April, 1915, John Black disposed of his interest in the barber shop to his brother Frank. The entire rent was paid to that date and the lessors were notified that John Black had no further interest in the business or lease.

Though Frank had an opportunity to dispose of the pool room outfit to one Gilreath for $1,000.00, he sold his interest to the appellant, Mrs. Bettie L. Hoskins, mother-in-law of his brother "Crit," for $600.00. Mrs. Hoskins made the purchase because of her desire to give employment to her son-in-law. To secure the payment of the purchase price Mrs. Hoskins and Crit Black executed to Frank Black a mortgage on the pool room outfit. Though it was the intention of the mortgagors to execute a note evidencing the indebtedness, and it was so expressed in the mortgage, for some reason this was not done. After this sale on September 20, 1915, the pool room was operated by Crit, who, by reason of his

dissolute habits and inattention to business, did not meet with much success in his management of same. The record is silent as to how much he did receive from its operation, as he never accounted to his mother-in-law for any of the receipts.

January 19, 1916, Ingram and wife filed suit against John Black and his brother Frank for the sum of $237.28, as rent overdue and unpaid to January 5, 1916, and pursuant to an order entered in that case the pool room outfit was sold and it was purchased by W. M. Baker for the sum of $415.00. Appellants were not parties to this suit, though they had notice of its pendency. Baker testified he made the purchase at the special instance and request of Mrs. Hoskins, who furnished his bond for the purchase price. After the sale the outfit was moved to Harlan, Ky., where it was operated by Baker for Mrs. Hoskins, until it was sold for $500.00.

In the present suit instituted April 26, 1916, appellees are seeking the recovery of $600.00, the purchase price of the pool room outfit.

The bank of John A. Black was made a party, it being alleged that appellee Frank Black had borrowed from said bank the sum of $400.00 and pledged the mortgage as collateral security on said obligation. Upon final submission judgment was rendered against appellants in the sum of $600.00, subject to a balance due on rent of $50.44, or a net sum of $549.56, out of which it directed that the bank be paid the sum due it, with interest. Complaining of this judgment appellants are seeking a reversal on several grounds, which we will take up in the order of their presentment.

It is first urged the court erred in rendering a personal judgment against appellants because the mortgage contained no promise to pay. There would be merit in this argument if it was supported by the record, but we do not think the mortgage is susceptible of that construction. In the second clause of the mortgage it is provided:

"That whereas the parties of the first part have this day purchased from the party of the second part, one pool room and pressing outfit thereafter described and for and in consideration of the sum of $600.00 to be paid four months from date, which is evidenced by a promissory note of even date, said note bearing interest at the rate of six per cent per annum."

And, again, in another clause we find:

"This indenture is conditioned as follows: That should parties of the first part or any one of them, discharge said note at its maturity which will be on the 20th day of January, 1916, then this mortgage shall be null and void, otherwise to remain in full force and effect."

A promise is an express undertaking or agreement to carry the purpose into effect, a declaration which binds the person who makes it, either in honor, conscience or law, to do or forbear a certain specific act. It is a declaration which gives to the person to whom made a right to expect or claim the performance of some particular thing. 32 Cyc. 633. In Harrow v. Dugan, 6 Dana 341, the words "I have borrowed so much money," were held to import a promise to pay. In Cheatham v. Cheatham, 6 Ky. Op. 450, a writing executed by an administrator stating there is due a certain person as his share of the estate $200.00, "to be paid," was properly treated not as an agreement to pay the debt out of the administrator's individual funds but as the evidence of a fiducial liability, and therefore was not affected by the bankruptcy of the administrator individually.

The expression in a writing "to be paid in solvent notes," was held in Williams v. Sims, 22 Ala. 512, to be a contract on the part of the maker to pay the sum specified. The words "to be paid" and "payable" were treated as convertible terms.

In Webster's New International Dictionary "promise" is defined as "to engage, to do, give or make; to covenant, to engage, to afford reason to expect."

It is generally held that an ordinary mortgage or deed of trust which contains no covenant for the payment of the debt is not evidence of indebtedness, and, where there is no personal obligation and no personal covenant in the mortgage, the only remedy is against the property mortgaged. 19 R. C. L. 513. It is sufficient to establish a personal liability against the mortgagor if the instrument contains admission of indebtedness on his part, in which event a promise will be implied and a legal liability created. However to create a personal liability by implication the admission of indebtedness contained in the instrument must be sufficiently plain to show that such was the express understanding of the parties. See Coleman v. Rensselaer, 44 How. Prac. 368, and note to Colby v. McClintock, 68 N. H. 176, in 73 Am. St. Rep. at p. 563.

The rule is well stated in 27 Cyc. 1274, viz.:

"In the absence of a covenant in a mortgage to pay the mortgage debt, the mortgage is not of itself an instrument which imports a personal liability, and no suit can be maintained upon it as a substantive cause of action, the mortgagee's remedy being confined to the land put in pledge. But a personal action may be maintained if the mortgage is accompanied by a note, bond, or other evidence of debt, or if the intention of the mortgagor to assume a personal liability can be made out by a fair implication, or upon the production of evidence of a subsisting debt or claim and of the mortgagor's promise or agreement to pay it, although such evidence is entirely extraneous to the mortgage, and even rests in mere parol."

The words "to be paid," as used. in the mortgage, import an undertaking or agreement that the debt would be settled, an obligation to see to its payment, that is, a promise to pay.

It follows from the foregoing that the court did not err in rendering a personal judgment against appellants.

It is next insisted that as there is no written evidence of any assignment or transfer of the lease to appellants it cannot be enforced as to them under the statute of frauds, Kentucky Statutes, section 470, the lease in the meantime having been extended for an additional period of six years. In answer to this contention suffice it to say that when John T. Black disposed of his interest in the barber shop in April, 1915, he notified the lessors he was no longer interested in the lease, and would not be liable for the rent. Furthermore it is testified that some time after that date, and before the lease was extended, inasmuch as the lessors considered John T. Black the only solvent one of the two lessees, they cancelled the lease, treated it as null and void and of no binding effect and declined to recognize the existence of any contract with Frank Black. At the time the present suit was filed the contract was in the possession of Crit Black. It does not appear how he obtained it, nor is this material. Appellants did not occupy the premises under the original lease, which had been abrogated, but were merely tenants at will, and as such liable for the rent during the period of their occupancy.

In the third place appellants contend that while they occupied the premises from the date of their purchase

until the levy of the attachment in the Ingram suit, to-wit: January 19, 1916, they were only liable for one-half of the entire rental, and in no event could this exceed Crit Black's one-half interest in the proceeds of sale of the outfit to Baker. On the other hand appellees claim that when they sold the property to appellants the rent was paid to that date. This is borne out by the testimony of witnesses for both parties, including the attorney and agent for the Ingrams. In the suit for rent, judgment was asked for $237.28, as the amount due January 5, 1916. The sum sued for at the rate of $70.00 per month covers a period of approximately 102 days. From September 20, 1915, the date of the sale to appellants, to January 5, 1916, is 107 days; thus we have a verification of the statement of appellees that the rent was paid to the date of sale. Then, too, it is shown that Crit Black made some payments to the Ingrams on account of the rent of the property subsequent to September 20, 1915, and Gilreath, to whom Frank Black sold the barber shop, made payments for his part of the premises to Crit Black after said date. The evidence conclusively shows appellants recognized the Ingrams as their landlords, and they undertook to pay them the agreed rentals.

In the fourth place it is said the sale by Frank Black to appellants and the procuration of the mortgage were fraudulent. There is nothing in the record to support this contention, a fact evidently conceded by appellants since they dismiss this proposition with the mere statement of it.

In the last place it is urged that appellants were deprived of their property without due process of law in that they were not parties to the suit instituted by the Ingrams and in which the pool room paraphernalia were sold. The sole argument on this point consists of a quotation from Freeman on Judgments, which, however, we do not consider *apropos*.

Appellants had notice of the Ingram suit; indeed an order of attachment was served on appellant, Bettie Hoskins, but for what purpose does not appear. The attorney for the lessors was also the attorney for appellant Bettie Hoskins in other matters, and she had consulted him about her interest in the pool room and told him her son-in-law was wasting everything that was coming into the business and she was going to make him straighten up and save sufficient money to pay the rent.

She procured Baker to bid on the pool tables, etc., at the sale; they were purchased in his name for her and she arranged the sale bonds.

Other than the order of sale and distribution of the proceeds no judgment has been entered in the rent suit. Both John T. Black and his brother Frank filed answers denying their liability for the rent, and no further steps were taken in this case. The lower court rendered judgment against appellants for only $549.56. Our calculation as to the amount of the judgment does not accord with that made by the lower court, but since only the appellants are objecting and the difference, though slight, is in their favor, they have no cause for complaint.

The judgment is therefore affirmed.