## Terrell, Jr., et al. v. Cheatham, et al.

## Terrell, Jr., et al. v. Mahoney's Extrx., et al.

## Terrell, Jr., et al. v. Eliza J. Mahoney, Extrx., et al.

(Decided October 26, 1923.)

## Appeals from Nelson Circuit Court.

1. Fraudulent Conveyances—Evidence Held to Show Debtor Insolvent.—In an action by creditors to set aside conveyances as fraudulent, evidence held to show that debtor was insolvent during the whole of the six months next before the filing of the action.

2. Fraudulent Conveyances—Simple Belief of Solvency Not Test of Intent.—Debtor's simple belief in his solvency is not the test of good faith in conveyances preferring creditors, but it must have been a reasonable belief in the light of all the facts and circumstances within his knowledge.

3. Fraudulent Conveyances—Evidence Held to Show Knowledge of Insolvency by Debtor and Transferees.—In an action by creditors to set aside conveyances and mortgages as fraudulent, held in view of the evidence, that the debtor and those to whom he conveyed or mortgaged his property could not have believed in debtor's solvency, or that he was treating all of his creditors fairly.

4. Partnership—Partners Furnishing Money Used by Another in Business Entitled to no Preference.—Where several partners furnished money to another partner, taking his individual note, and guaranteeing his note to a third person, and he invested the money in the partnership business, the lending partners are not entitled to preference over other creditors of the borrowing partner, and a subsequent mortgage to them on the borrower's interest in the partnership to secure the loan and a mortgage on individual assets to secure another indebtedness were fraudulent as to creditors, where the borrower was insolvent at the time of the mortgage.

5. Contracts—Instruments Executed Simultaneously Construed Together.—Where two written instruments by the same parties are executed simultaneously, refer to each other, and relate to a single transaction, they should be construed together as constituting the entire contract between the parties.

6. Mortgages—Note and Mortgage Construed Together to Determine Date of Payment of Interest.—Where a note simply promised to pay money on a certain date with interest at 6 per cent, but recited that it was secured by a mortgage of even date, the note must be construed with the mortgage, which recited that interest was payable annually.

7. Mortgages—Maturity Not Accelerated by Non-Payment of Interest when Not so Provided.—Where neither note nor mortgage securing it provided for precipitation of maturity for non-payment of interest, mortgagee was not entitled to judgment for the principal sum and an order for sale of the land, because of non-payment of annual interest.

8. Evidence—Common Knowledge that Farm Values Not Increased. —It is a matter of common knowledge that farm values have not increased since August, 1922.

9. Mortgages—Evidence Justified Finding that Property Probably Insufficient to Discharge Debt, Warranting Receiver.—On motion by mortgagee for appointment of receiver, evidence held to justify a finding that the property mortgaged was "probably insufficient to discharge the debt" within Civil Code of Practice, section 299, warranting appointment of receiver in action by mortgagee for protection of mortgaged property.

10. Mortgages—Appointment of Trustee in Suit by Creditors does Not Prevent Appointment of Receiver in Action by Mortgagee.—The appointment of an assignee or trustee at the request of creditors to take charge of all of debtor's property for the benefit of all his creditors, as provided by Ky. Stats., section 1910, did not interfere with the power of the court to appoint a receiver in another action by a mortgagee to take charge of mortgaged property for the benefit of creditors having liens thereon, under Civil Code of Practice, section 299.

11. Mortgages—When Receiver May be Appointed Before Maturity of Note Stated.—Under Civil Code of Practice, section 299, a receiver may be appointed to take charge of mortgaged property before the maturity of the note secured by the mortgage when the property is shown to be probably insufficient, and is in danger of being lost, removed, or injured, or where any substantial condition has not been performed which may endanger collection at maturity.

NAT W. HALSTEAD for appellants.

KELLEY & KELLEY for appellees Mahoney and others.

FULTON & FULTON for appellees Cheatham and others.

OPINION OF THE COURT BY JUDGE CLARKE—Affirming on the original and reversing on the cross-appeal in the first case, affirming on both original and cross-appeals in the second case, and affirming on the appeal in the third case.

These three appeals, although presenting separate and distinct questions of law and fact, were heard together upon motion of the parties, and will be disposed of in one opinion, but separately.

### 1. TERRELL, ET AL. v. CHEATHAM, ET AL.

In the summer of 1920, appellant W. J. Terrell, Jr., having become heavily involved, executed mortgages to some of his creditors and transferred property to others, to secure or satisfy pre-existing debts. In January, 1921, George Cheatham, and several other unsecured creditors, filed the above styled action against Terrell and his creditors whom he had secured or paid within six months theretofore, alleging that these transactions were preferential and fraudulent, and operated as a general assignment for the benefit of all creditors under the provisions of section 1910 of Kentucky Statutes.

The court so adjudged, except as to one or two of the transactions which were held not to be within the purview of the statute. From that judgment, Terrell and his creditors whose preferences were avoided have appealed, and the plaintiffs have cross-appealed from so much of the judgment as sustained a mortgage executed by Terrell to W. C. and A. L. Holt, on August 24, 1920.

Terrell admitted an indebtedness of $120,000.00, but, claiming that property owned by him was worth about $150,000.00, denied his alleged insolvency, or that any of the transactions were in contemplation of insolvency. To sustain his claim of solvency, he proved by himself and several other witnesses that property owned by him, about which there is no controversy, was at the time of the involved transactions reasonably worth as follows:

His home farm of 233 acres, at $200.00 an acre......$46,600
The Waddy McMakin farm of 210 acres, at $200.00
    an acre ................................................................ 42,000
18,500 pounds of new tobacco............................................. 1,975
One-half interest in 550,000 pounds of A. L. Holt
    & Co.'s old tobacco ......................................................... 57,200
1,000 bushels of corn .............................................................. 800
Horses, cows, hogs, and other personalty.................... 1,215

There is no dispute as to the values of the three small items listed above, but the evidence for the plaintiffs is that the Waddy McMakin farm was worth, at the time,

only about $150.00 an acre, or $32,000.00, and that the home farm was worth about $25.00 less per acre, or a total of about $30,000.00. The former was sold under a decree of court in April, 1921, and brought only $147.50 per acre, and the weight of the evidence is, we think, that these farms, at the involved time, could not have been sold for more than $150.00 an acre, and that a valuation of them in excess of $75,000.00 was unwarranted.

The A. L. Holt & Co. tobacco, of which Terrell originally owned an undivided one-fourth interest and in which he later acquired a half-interest by buying out one of the four partners, was purchased on the loose-leaf market in the winter of 1919-20, and cost an average of 11 cents a pound, and, as the evidence conclusively shows, was bought too high for profitable sale during the summer, fall, or winter of 1920.

We are therefore convinced that Terrell's undivided half-interest in the 550,000 pounds of tobacco ought not to have been valued in excess of $30,000.00, and that Terrell was insolvent during the whole of the six months next before the filing of this action.

But it is insisted by his counsel that even if this be true, the involved transactions were not fraudulent or preferential within the meaning of the statute, if the defendant at the time believed he was solvent and acted in good faith, as he testified. His simple belief, however, in his solvency is not the test, it must have been a reasonable belief in the light of all the facts and circumstances within his knowledge. With reference to this question, we said, in Thompson, etc. v. Heffner's Executors, 74 Ky. 353:

"Both contemplated insolvency and a sale, mortgage, or assignment to or for the benefit of a creditor must concur before the trust for creditors can result from the operation of the statute. (Temple, Barker & Co. v. Poyntz, 2 Duv. 277.) But if the facts are such as to show that at the time of making a mortgage preferring one creditor to another the debtor must have known he was insolvent, it will be within the statute (Applegate v. Murrill, 4 Metc. 23); for, if he knows he is insolvent, he must know that a mortgage to one of several creditors will prefer such creditor to the exclusion in whole or in part of others, and he must be taken to have designed that which he knew would result from his act."

That his creditors, who were closely associated with him and presumably conversant with his affairs, recognized his insolvency is attested by their demanding security or immediate payment of pre-existing debts; and to satisfy these demands, Terrell not only mortgaged or surrendered practically everything he owned, including his growing crops, much of his farming equipment, and even his piano. That his then insolvency was pretty generally recognized in the community where formerly his credit was seemingly unquestioned, is strikingly illustrated by the fact that his automobile was withheld from him at a local garage to secure a repair bill of less than $100.00.

In the light of these facts, it is inconceivable that Terrell, or those to whom he gave the mortgages, could have believed in his solvency, or that he was treating all of his creditors fairly when he was securing or paying only a part of them to the necessary exclusion of the others.

We are therefore clearly of the opinion the court did not err in declaring such of the complained of transactions preferential as were within the purview of the statute.

Counsel for appellants argue that for one reason or another most, if not all, of these transactions do not come within the statute, but in this he is so clearly mistaken that we do not deem it necessary to discuss any of them except the two mortgages executed on August 24, 1920, by Terrell to A. L. and W. C. Holt. One of these mortgages was on Terrell's growing crop, and was primarily intended to secure the payment of a note for $3,804.00 previously executed; the other mortgage was on Terrell's original one-fourth interest in the A. L. Holt & Co. partnership tobacco, and was given to secure a $9,000.00 note theretofore executed by him to the Holts. Both mortgages were intended also to indemnify one of the Holts from loss by reason of his having guaranteed a note of Terrell's for $5,000.00 to one S. S. Bishop.

The chancellor held the mortgage on the growing tobacco preferential, but sustained the mortgage on Terrell's interest in the A. L. Holt & Co. partnership tobacco. Appellants claim the chancellor erred in the first instance, and appellees that he erred in the latter.

It is the contention for the appellants that as both of these mortgages were given by Terrell to secure them for

moneys they had advanced to him to enable him to pay for or carry his part of the partnership tobacco, they, as partners in the business, had a preferred claim against the partnership assets and Terrell's interest therein to secure such advancements, and that it was therefore not a preference to give to the Holts, as members of the firm, a mortgage on his interest therein, since it did not, in fact, affect the rights of the parties.

Conceding the legal principle contended for when the facts warrant its application, we find no facts here to which it may be applied. The growing crops mortgaged to the Holts were not partnership assets, but Terrell's individual property, and not in anywise connected with the partnership business, and it is apparent that neither his partners nor the firm had any kind of preferential claim against same for money loaned him for use in the partnership business, unless under and by reason of the mortgage.

It is too clear for argument, we think, that the court did not err in holding that mortgage preferential and void.

The $9,000.00 loaned Terrell by the Holts, as well as the $5,000.00 loaned him by Bishop, was put by him into the partnership business, but the partnership advanced him none of this money. He, as an individual, borrowed the $9,000.00 from the Holts, and at the same time gave them, as individuals, his personal note therefor. He borrowed the $5,000.00 from Bishop, gave him his note therefor, and one of the Holts, by written endorsement on the note, personally guaranteed its payment. Later he executed the mortgage to the Holts on his interest in the partnership assets to secure the money they had loaned him and to indemnify one of them upon his guaranty to Bishop.

Neither of these sums was loaned to or borrowed by the firm, or is in any sense a partnership indebtedness. Each was simply a transaction between individuals, and the fact that the Holts and Terrell, with one Shea, composed the firm into whose business Terrell invested the money thus borrowed from or by the assistance of his partners, cannot make of these transactions partnership affairs.

It is only partnership debts and affairs that are settled out of partnership assets before creditors of one of the partners are entitled to participate therein, and there is neither reason nor authority for extending the prin-

ciple so as to include individual transactions between members of the firm. It certainly cannot be contended that Bishop had a preferential claim on Terrell's interest in the partnership property because of the fact he loaned him $5,000.00 for his use in that business. Nor can A. L. Holt possibly occupy any better position than he by reason of the fact he guaranteed the payment of Terrell's note to Bishop.

The partnership was not involved in this transaction —either as creditor or debtor, or in any other way—and the mortgage on the partnership assets to indemnify Holt because thereof, was clearly preferential and void.

The $9,000.00 transaction between Terrell and the Holts is, it seems to us, not at all different in any of its essential features, since, as already stated, it was but a transaction between the individual members of the firm in which the partnership was not involved in any way.

We are therefore of the opinion that the court erred in refusing to set aside this mortgage.

Wherefore the judgment in this case is affirmed on the direct appeal, and reversed upon the cross-appeal, with directions to adjudge void the mortgage to the Holts on Terrell's interest in the partnership tobacco.

### 2. TERRELL v. MAHONEY'S EXECUTRIX.

In this action Eliza J. Mahoney, as executrix of her deceased husband, sought a judgment against Terrell and his wife on a note for $20,000.00, with interest payable annually, from January 6, 1920, and the enforcement of a mortgage lien on Terrell's home farm, given to secure its payment.

By the note, dated January 6, 1920, Terrell and wife simply promised to pay Mahoney $20,000.00 four years and eleven months thereafter, with interest at six per cent. from its date. It recites, however, that it was secured by a mortgage of even date, and that mortgage recites that the interest is payable annually, but there is no provision in either the note or the mortgage for precipitating the maturity of the note.

It was alleged in the petition that such a provision was agreed to by the parties, and omitted from the note and mortgage by mistake. There is, however, no proof to sustain this plea, which was controverted by the defendant. Plaintiffs also claimed a precipitation of the maturity of the obligation upon the ground that the de-

fendants, in order to obtain the loan, fraudulently represented the land mortgaged to contain 243 acres, when, in fact, by reason of Terrell's having sold off several lots, it contained only 233 acres; and that the land was free of incumbrances or adverse claims, when, in fact, there were outstanding purchase money liens against same amounting to nearly $7,000.00.

The trial court held that the interest was payable annually, and gave plaintiffs a judgment against the defendant for $1,200.00 for the first year's interest, then past due, but refused to give a judgment for the principal sum or to order a sale of any part of the land in lien therefor.

Defendants have appealed from so much of the judgment as holds the interest payable annually, and from the judgment against them for $1,200.00 for one year's interest, while the plaintiffs have prosecuted a cross-appeal from so much of the judgment as rejected their plea that the maturity of the note was precipitated by the alleged false representations and refused a judgment for the principal sum and enforcement of the mortgage lien.

The rule is thoroughly established that where two written instruments between the same parties are executed simultaneously, refer to each other, and relate to a single transaction, they should be construed together as constituting the entire contract between the parties. Sowders v. Gingell, 174 Ky. 127, 191 S. W. 897; Hoskins v. Black, 190 Ky. 98, 226 S. W. 384, 18 C. J. 216.

As the note provides for interest at six per cent. per annum, and it is recited in the mortgage that this interest was payable annually, the court did not err in giving judgment for plaintiffs against the defendants for the one year's interest, past due and unpaid. Nor do we think that the court erred in refusing to give plaintiffs judgment for the principal sum and order a sale of the land to secure its payment, contrary to the terms of the contract.

For our present purpose we may assume without deciding, as plaintiffs contend, that, where the mortgagor makes false representations to the mortgagee concerning the quantity of land mortgaged and the condition of his title, for the purpose of inducing the loan, and the mortgagee, relying upon these representations, makes the loan and accepts the mortgage as security therefor, a court of equity should avoid the mortgage and restore the

*status quo* by selling the land to enforce prompt repayment of the loan.

But even so, the chancellor did not err in refusing to grant plaintiffs such relief because it was shown without contradiction that Mahoney, before he made the loan to Terrell, knew of the sale by defendants of several small tracts off of the land described in the mortgage, and that there were outstanding against same several purchase money liens; and that he was not induced to make the loan either by the description of the land or the warranties contained in the mortgage, upon which alone the charge of false representations is rested.

Wherefore the judgment in this case is affirmed upon both appeals.

### 3. Terrell, et al. v. Eliza J. Mahoney, Extrx.

After the judgment in this case referred to above had been rendered, appealed, and superseded, and after another year's interest was due and unpaid, the court, upon motion of the plaintiff, appointed a receiver to take charge of the mortgaged property, and the last of these three appeals questions only the action of the court in so doing.

If it is true, as we believe it is, and as we have held in the first case, *supra*, that Terrell's home farm, consisting of 233 acres—and which he mortgaged to Mahoney to secure the $20,000.00 loan—was worth only about $150.00 an acre in the summer or fall of 1920, it could not have been worth more than about $35,000.00 when the receiver was appointed, since it was shown, and is matter of common knowledge, that farm values have not increased since that time, but upon the other hand have decreased.

The $20,000.00 note does not mature for four years and eleven months, and the indebtedness with interest will then amount to about $26,000.00. There are prior liens on the land for purchase money aggregating about $7,000.00, which, with accumulated interest from August, 1922, when the receiver was appointed, to December, 1924, when Mahoney's note matures, will amount to more than $7,500.00.

Terrell did not pay his taxes for the year 1921, and his insolvency then being clearly apparent, the land covered by Mahoney's mortgage was sold to satisfy same, whereby a lien was created on same, amounting to about $1,300.00. It is therefore apparent that by reason of these prior liens against the land, it is very doubtful

whether or not, even if defendant should pay the future installments of interest and taxes and keep up the insurance on this farm until the maturity, in December, 1924, of Mahoney's debt, the mortgage will be sufficient to secure its payment.

Section 299 of the Civil Code reads:

"In an action by a mortgagee for the sale of the mortgaged property, a receiver may be appointed, if it appear that the property is in danger of being lost, removed or materially injured, or that the condition of the mortgage has not been performed, and that the property is probably insufficient to discharge the mortgage debt."

We think that the chancellor was justified in finding from the evidence that the property mortgaged to Mahoney "is probably insufficient to discharge the debt." The mortgage provided, as we have already pointed out, for payment of interest annually and this condition has not been performed. The mortgage also obligated the mortgagor to pay the taxes and the insurance premiums of the policies on the building, and these conditions have not been performed by the mortgagor. There is also proof that the defendant is plowing up the grass-lands on the farm and thereby injuring the mortgaged property.

We cannot, therefore, overrule the findings of the chancellor that the conditions were present which authorized the appointment of a receiver.

But it is earnestly insisted by counsel for appellant, that even if this be true, the court was yet without the power to appoint a receiver in this case because he had theretofore appointed one in the case of Cheatham, et al. v. Terrell, et al., *supra.*

These two cases proceeded separately to final judgment in the lower court, the one by unsecured creditors to enable them to participate upon an equal footing with all other general creditors in all of defendant's property not subject to valid liens, the other by a mortgagee to subject the home farm to valid liens thereon. Separate judgments were rendered in each case upon the same day, and there was no effort or any order for their consolidation except that the judgment in the Mahoney case closes with an order consolidating them, upon motion of the plaintiffs in that case, over the objections and exceptions of the defendants. The defendants not only prosecuted separate appeals in each case, but they superseded both judgments, and the cases are heard together here

only because of a motion for that purpose made and sustained in this court. None of the plaintiffs in the Cheatham case was a party to the Mahoney case, and neither of the plaintiffs in the Mahoney case was a party to the Cheatham case.

It is therefore hard to understand upon what ground it can be argued that any action in the one case can preclude even a like action in the other, but even if this were possible, the Cheatham judgment appointed an assignee or trustee to take charge of all of Terrell's property for the benefit of all of his creditors, as if he had made a general assignment for their benefit, and as is provided under section 1910, Kentucky Statutes.

We cannot see how such action by the court in one case can interfere with its power to appoint a receiver in another case to take charge of mortgaged property for the benefit of creditors having liens thereon, and as is expressly provided may be done under the provisions of section 299 of the Code. In fact, we are unable to see any reason why the court might not do this even where the two cases had been consolidated and heard together, or even if there had never been but one case in which the whole matter here involved in the two cases was being litigated. The two statutes are not repugnant to each other, and there could be no possible conflict even though in one case a general trustee was appointed under section 1910 of the statutes, and a special receiver was appointed under section 299 of the Code, except between the trustee and the receiver as to the extent of the authority conferred upon them, and this the court, which had appointed them both, certainly could regulate. In no event could the owner be prejudiced by reason of the fact that the court, in taking charge of his property for the benefit of his creditors, had appointed both a general trustee and a special receiver.

We are therefore of the opinion that there is no merit in this contention.

Still another insistence is that as the $20,000.00 note and mortgage was not due, section 299 of the Code is inadequate.

From what we have already said, it is apparent that the facts of this case fit exactly into the plain provisions of that section, unless the provision in the section, "or that the condition of the mortgage has not been performed," refers only to the satisfaction of the mortgage at its maturity. That such is not the fair meaning of the

language employed is, we think, apparent, nor has this court ever attributed to it such a narrow meaning, although unquestionably a failure to pay the debt at maturity would come within its terms.

The purpose of this section, as interpreted by the numerous decisions of this court, was to enable the mortgagee to sequester rents and profits from mortgaged property whenever the property itself was shown to be probably insufficient for the purpose, and it was also made to appear that the property was in danger of being lost, removed, or materially injured, or that any substantial condition of the mortgage had not been performed which might endanger the collection at maturity of the entire indebtedness the mortgage was intended to secure.

Unquestionably the mortgage here was intended to secure not only the payment of the principal sum but any interest as well that may have accumulated thereon at maturity.    This purpose has been endangered by reason of the defendant's failure to perform the conditions of the mortgage in the respects heretofore enumerated, and unless, because thereof, the mortgagor may have a receiver appointed, he may not, at maturity, have the mortgage debt discharged as the parties contemplated it should be out of the mortgaged property, unless he may sequester the rents and profits accruing therefrom in the meantime to take care of its unperformed conditions, as the section under such circumstances provides may be done.

We are therefore clearly of the opinion that this contention is likewise without merit, and that the order appointing the receiver should be affirmed, and it is so ordered.