**HILPERT et al. v. COMMISSIONER OF INTERNAL REVENUE.**

No. 11307.

Circuit Court of Appeals, Fifth Circuit.
Nov. 20, 1945.

HUTCHESON, Circuit Judge, dissenting in part.

————◆————

H. M. Voorhis, of Orlando, Fla., for petitioners.

Frederic G. Rita, Sewall Key, A. F. Prescott, and Harold C. Wilkenfeld, Sp. Assts. to Atty. Gen., Samuel O. Clark, Jr., Asst. Atty. Gen., and J. P. Wenchel, Chief Counsel, Bureau of Internal Revenue, and John M. Morawski, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., for respondent.

Before HUTCHESON, McCORD, and WALLER, Circuit Judges.

WALLER, Circuit Judge.

Charles R. Hilpert and Minnie P. Hilpert are husband and wife, who, together with Anna I. Hilpert, were co-partners and prior to March 1, 1913, acquired some real estate in Orlando, Florida, the adjusted value of which, for income tax purposes, was $15,668.25.

Prior to June 15, 1931, the Hilperts sought a loan from Frank E. Markell in the amount of $65,000, to be secured by a mortgage on the real estate. Markell did not want a mortgage but agreed to let the Hilperts have the $65,000 in exchange for a warranty deed, absolute in form, but with a side agreement to permit the Hilperts to buy the property back on or before June 15, 1933, for the price of $86,000 in cash. The deed was duly executed and delivered, as was the option to allow the Hilperts to repurchase.

On February 4, 1932, the accountant for the Hilperts wrote the Collector of Internal Revenue at Jacksonville, Florida, stating the facts as to the transaction and requesting a ruling as to how it should be reported in the 1931 tax return. The Collector replied by letter as follows:

"It is stated that taxpayers wished only to borrow $65,000.00 on the property, but the lenders insisted that the property be conveyed. You now wish to know whether this transaction will have to be returned in the income tax reports.

"It is the opinion of this office that this transaction can be described only as a definite sale of the property, and any profit represented from the sale shall be reported as income.

"The property has been conveyed by warranty deed and the taxpayers have no control over it except option to purchase it, which may or may not be exercised.

"It is entirely clear that any profit shown in the sales price of $65,000.00 is income to the sellers."

The Hilperts, following the instructions of the Collector, reported the transaction as a sale in the calendar year 1931 and paid income taxes on the resultant capital gain of $49,209.69.

When Markell received the deed he went promptly into possession, collected the rents, and made repairs at his own expense. The Hilperts failed to exercise the privilege of repurchasing the property on or before June 15, 1933, and Markell continued to treat the property as his own until January, 1940, when he, pursuant to the affirmance by the Supreme Court of Florida of a decree of the Circuit Court of Orange County, Florida,[1] reconveyed the property to assignees, or vendees, of the Hilperts.

The Circuit and Supreme Courts of Florida each held that the deed from the Hilperts to Markell, although absolute on its face, was given as security for money loaned and was, therefore, a mortgage. The Court did not order foreclosure of the mortgage, so declared, by the usual sale at public auction, but fixed a period of eighty-three days within which the plaintiffs would be allowed to redeem the property or else be barred of all right, title, and interest in the real estate involved.

The Court also took an accounting of the rents collected by Markell and his vendees, who were decreed to be in privity with him. After allowing Markell interest at six per cent on the $65,000, and after deducting the rents collected by Markell, the Court found that the amount necessary to redeem was $54,364.67. The net rentals collected by Markell paid the interest and reduced the $65,000, which he had paid the Hilperts, to the sum of $54,364.67.

On the 10th of May, 1937, the Hilperts filed the suit against Markell and his vendees, asking the Court to decree the transaction to be a mortgage instead of a sale and to permit them to redeem after an accounting by Markell of the rents. On the same day the Hilperts placed, in escrow, in the First National Bank a deed to the real estate, with Lawton Investment Company as grantee. The escrow agreement set out, among other things: That the Hilperts were instituting a suit in the Circuit Court in and for Orange County, Florida, to redeem a mortgage evidenced by a deed from them to Frank E. Markell; that they had agreed to sell the property to Lawton Investment Company if the foregoing suit was successful; that the terms of the sale were the redemption price for the mortgage to be paid by Lawton Investment Company and $10,000 in cash to be paid to the Hilperts, plus one-half of the difference between $65,000 and any sum below $65,000 at which the decree of the Court should state the mortgage could be redeemed. The escrow agreement instructed the Bank "* * * to deliver said deed to Lawton Investment Company, a corporation, any time up to ten days after favorable decree of Court becomes final, upon the payment to said bank of the sum of $10,000, plus one-half the difference between $65,000 and any sum less than $65,000 decreed by the Circuit Court of Orange

---

[1] Markell v. Hilpert, 140 Fla. 842, 192 So. 392.

County, Florida, in the suit of Anna I. Hilpert, et al., versus Frank E. Markell, et al., to be the amount necessary to be paid to redeem the above mentioned mortgage; the amount collected to be turned over to parties of the first part upon their receipt. Should said deed be not taken up by Lawton Investment Company within ten days after favorable decree of Court becomes final, then said deed is to be returned to parties of the first part and this escrow shall cease and determine."

After the suit was terminated in favor of the Hilperts, Lawton Investment Company redeemed the property from the mortgage, paid Hilperts the sum of $17,067.67 made up as follows: $10,000, plus one-half of the difference between $54,364.67 and $65,000, to-wit, $5,317.67, and the further sum of $1750 as an agreed refund of commissions, and thereupon received the deed to the real estate from the Hilperts.[2] The Hilperts returned for income tax purposes the sum of $17,067.67, or the amount of cash that they had received as a result of the successful outcome of the suit. The contract with Lawton Investment Company was made in anticipation of, and wholly contingent upon, winning the suit.

In the transaction between them and Markell the Hilperts signed no note, or mortgage, or covenant of any kind whatsoever, evidencing any obligation to repay any sum of money. They executed only a deed purporting to convey the said real estate.

The Commissioner held that in addition to the $17,067.67 which the Hilperts had already returned for taxation they were also liable for $10,635.33 of net rentals collected by Markell which went to the reduction of the mortgage indebtedness, plus $54,364.67, the amount paid by Lawton Investment Company to redeem, less, of course, the adjusted value of the property in March, 1913, of $15,668.25. The Tax Court sustained the Commissioner.

Although the Hilperts had acted on the advice of the Collector of Internal Revenue and treated the transaction as a sale in 1931 and had, for that tax year, paid on a capital gain of $49,209.69, no credit was allowed in the delinquency assessment by the Commissioner or by the Tax Court for the taxes so paid on the proceeds of the 1931 sale of the same property, even though the 1940 transaction is but an aftermath, or a winding-up, of the 1931 transaction.

The Tax Court said:

"It follows that when the petitioners in the tax year disposed of the property in what was an unmistakable sale, they did no more and no less than is done by any vendor when he sells property covered by a mortgage or other lien and receives in the purchase price cash or other property. The difference between his basis and the fair market value of the consideration received is taxable. Accordingly, petitioners are properly chargeable as capital gain with the difference between their basis and the consideration for the sale.

"There is no dispute as to basis. The controversy relates to the amount of the consideration. It is true that all that petitioners received upon the sale was the cash paid to them by the vendees. * * *."

" * * * Only when the facts are so peculiar that the mortgage neither constitutes a liability of the seller nor is responsible for a part of the aggregate benefit received can it safely be eliminated from the computation of gain."

We find no fault with the foregoing statement of legal principles but only in their application to the peculiar facts in this case. We think that the Tax Court erred in its view as to what the Hilperts received.

If the transaction between the Hilperts and Markell had created an enforceable liability against the Hilperts to repay $65,000 loaned by Markell, the discharge of that liability through the assumption and payment by a purchaser would unquestionably have been a benefit received, a consideration paid, and taxable as such. But in the present case the Hilperts signed no note, no mortgage, no covenant, and made no promise in writing, or otherwise, to repay the loan. No action could have been

2 The computation is as follows:

| | | | | |
|---|---|---|---|---|
| Original amount of mortgage.... | $65,000.00 | | One-half of difference of mortgage and amount to redeem.... | 5,317.67 |
| Amount to redeem ............... | 54,364.67 | | Commission agreed upon by parties ........................... | 1,750.00 |
| Difference ........................ | $10,635.33 | | | |
| One-half of difference........... | 5,317.67 | | Total ........................ | $17,067.67 |
| Cash amount named in agreement for deed ................... | $10,000.00 | | | |

maintained by Markell against the Hilperts.

■ Under Mortgages, 49 C.J., § 224, the general law is stated as follows:

"Absence of Covenant. If there is no such covenant in the mortgage and no collateral obligation in the way of a note, bond, or other evidence of the debt, an action of debt will not lie on the mortgage, but the property alone is charged with the lien and must be looked to by the mortgagee as the sole source out of which he is to make good his claim."

In 37 Amer.Jur., page 24, § 517, under Mortgages, there is this statement:

"Where there is no personal obligation and no personal covenant in the mortgage, the only remedy is against the property mortgaged."

In Hoskins v. Black, 190 Ky. 98, 226 S. W. 384, 385, the Court stated:

"It is generally held that an ordinary mortgage or deed of trust, which contains no covenant for the payment of the debt, is not evidence of indebtedness, and, where there is no personal obligation and no personal covenant in the mortgage, the only remedy is against the property mortgaged. 19 R.C.L. 513. It is sufficient to establish a personal liability against the mortgagor, if the instrument contains admission of indebtedness on his part, in which event a promise will be implied and a legal liability created. However, to create a personal liability by implication, the admission of indebtedness contained in the instrument must be sufficiently plain to show that such was the express understanding of the parties."

■ The fact that there was no covenant to repay the money, evidenced either by note, bond, mortgage, or other writing, would not prevent the enforcement of the mortgage against the mortgaged property even after the writing evidencing the debt had become barred by the statute of limitations. Ellis v. Fairbanks, 38 Fla. 257, 21 So. 107, 109.

■ The land was put up purely as a pledge under such circumstances that the Courts deem it to be a mortgage. Under the transaction petitioners had: (1) A right to repurchase within two years; (2) a right to have the contract construed as an instrument to secure the payment of money with the consequent right of redemption; and their failure to resort to either of these remedies would have eventually resulted in the loss of the land, but in no wise was there any personal liability which Markell could enforce against the Hilperts, and the only recourse that he had was against the realty.

In Florida no debt was created by the transaction but even if there had been, suit thereon would be barred unless brought within three years under § 4663(5), C.G.L., F.S.A. § 95.11(5), since there was no promise in writing to pay Markell. Even if there had been a note or a promise in writing, but not under seal, the statute of limitations would have run in five years (§ 4663(3), C.G.L., F.S.A. § 95.11(3). There surely was no obligation under seal and the statute of limitations had run against any suit on an obligation not under seal long before 1940. The Florida Supreme Court held in Bank of Wildwood v. Kerl, 138 Fla. 527, 189 So. 866, that a deficiency decree cannot be made in foreclosure proceedings where the debt secured by the mortgage is barred by the statute of limitations.

That Court went further, in that case, and said that even though there was a covenant in a mortgage under seal providing that the mortgagor would pay sums made payable by virtue of the note secured by the mortgage, such a covenant in the mortgage was not sufficient to bind the mortgagor personally for the debt if the note itself was not under seal and was barred by the five-year statute of limitations. See also the more recent case of Alropa Corporation v. McNamee, 143 Fla. 785, 197 So. 514.[3]

■ In 37 C.J. 704, § 23, it is stated:

"No deficiency judgment or decree can be made in foreclosure proceedings where

---

[3] In Alropa Corporation v. McNamee, supra [143 Fla. 785, 197 So. 515], the Supreme Court of Florida said:

"It will be observed that by the covenant relied upon the makers did not unconditionally promise 'to pay the debt evidenced by the note but the promise was to pay all and singular the principal and interest and other sums of money payable by virtue of the said promissory notes and this deed, or either.'

"This was not sufficient to constitute an unconditional independent covenant to pay the debt but was a covenant to pay such sums as might be required to be paid under the terms of the notes. In other words, this covenant was an agreement to be bound as far as the notes

the debt secured by the mortgage is barred by the statute of limitations."

There is nothing in the case to suggest that there was any personal liability of the Hilperts to Markell, and the record does not show that any effort was made in the State Court by Markell to assert, or to seek to enforce, any such liability. It further appears that even if a personal liability could be implied, the Florida three-year statute of limitations would have barred the right to recover before 1940. Markell no doubt realized that he had the right to proceed only against the security.

■ Since there was no note, no covenant, and no agreement to repay the $65,000, and no enforceable obligation against the Hilperts in the transaction,. the Tax Court was wrong in holding that the payment of the $54,364.67 by Lawton Investment Company in redeeming the property was a benefit received by the sellers out of that purchase. The case clearly comes within the exception stated by the Tax Court that when the mortgage neither constitutes a liability of the seller nor is responsible for a part of the aggregate benefit received it is appropriate that the amount paid by another to redeem property from the mortgage should be eliminated from the computation of gain to the mortgagor.

■ Since there was no personal liability that could accrue against the Hilperts, all that they got out of the transaction was the $17,067.67, and looking at the substance of the transaction rather than the form, it would seem that they sold only a right of redemption, or a right of action. Perhaps it might be accurate to say they sold a chose in action, or the right to have the fruits of a suit upon making certain payments in the event the suit was won, for it was the suit that produced the gain. The deed would have always been a deed if the suit had not resulted in its being declared a mortgage.

The taxpayers paid the taxes on $49,209.69 which they received out of this transaction in 1931 when the taxing authorities ruled that a sale had been made. The sellers received that sum but once, yet the effect of the decision of the Tax Court is to tax them twice on the same sum.

We agree with the dissenting opinion in the Tax Court that the Tax Court's holding seems to be entirely unrealistic. The appetite for taxes is not so voracious, the commands of the statute are not so inexorable, as to require the doing of an injustice when there is open another course that is more fully consonant with law and reason and which course, if followed, will lead neither to evasion by the taxpayer nor extortion by the Government.

Under these views the holding of the Tax Court that the petitioners are liable for the sum of $10,635.33, representing net rentals received by the mortgagee on the real estate and applied by the Court as a credit on the mortgage, cannot be sustained. The obligation to redeem, under the contract with Lawton Investment Company, was not on the Hilperts, and the allowance of that sum by the Circuit Court of Orange County toward the reduction of principal and interest afforded no gain to petitioners in excess of the one-half of such amount which the Lawton Investment Company paid to petitioners and which petitioners returned and paid the taxes thereon. This one-half was included in the total of $17,067.67 paid by Lawton Investment Company to the Hilperts.

The judgment of the Tax Court is reversed.

HUTCHESON, Circuit Judge (dissenting in part and in part concurring).

In the letter [1] written by petitioners'

---

would bind the makers. Therefore, any defense applicable to the note would constitute a defense against the enforcement of this covenant. * * *

"In the case of Bank of Wildwood v. Kerl et al., 138 Fla. 527, 189 So. 866, we had under consideration a case in which the record showed that the notes given to secure the mortgage were barred by the statute of limitations and the covenant relied on contained in the mortgage was identical with the covenant involved in the present suit, and there we held:

" 'A covenant within a mortgage under seal providing that mortgagor would pay sums payable by virtue of note secured by mortgage was not sufficient to bind mortgagor personally for the debt; and hence if note, which was not under seal, was barred by five-year statute of limitations, a deficiency judgment could not be entered against mortgagor in foreclosure proceedings. Comp.Gen. Laws 1927, § 4663, subd. 3.' "

[1] "It is not the intent of the owner to sell this property at this price, but simply to borrow this amount of money, and following their preliminary negotiations for a loan they had made arrange-

counsel to the Collector, February 4, 1932, they stated that the transaction between them and Markell, in the form of a sale with an option to pay back, was in fact a loan. In their suit brought in 1937, and in the escrow agreement with Lawton made at the same time, they asserted that the transaction between plaintiffs and Markell constituted a loan of money to them with a mortgage to secure it, and not a sale. The district court so adjudged, and the Supreme Court affirmed. There was nothing in the petition, in the decree, or in the opinion of the Supreme Court indicating or even suggesting that the Hilperts were not obligated to repay the amount of the loan. Indeed, the decree required Markell to execute an instrument reciting in part, "and the said parties of the first part do fully acknowledge full payment of the indebtedness owing by parties of the second part". If, therefore, the lack of personal obligation, of which the majority opinion makes so much, were material here, and I think it wholly immaterial, in determining whether the property was sold to Markell in 1931, or, as the Tax Court held, to Lawton in January, 1940, the record, so far from showing that there was such lack of obligation, shows quite the contrary. But whether there was a personal obligation or lack of it, the record permits no escape from the conclusion that in fact and in law there was no sale in 1931, from which a capital gain could arise, but a loan, and that in fact and in law there was a sale in 1940, and a capital gain then arising. I think it clear, therefore, that the Tax Court was right for the reasons that it gave in sustaining the commissioner's determination as to the capital gains tax due, and the majority was wrong in reversing that determination.

On petitioners' second point, that they ought not to be taxed as ordinary income on $10,635, the difference between the $65,-000 borrowed in 1931 and the $54,365 re-quired to redeem in 1940, I agree with them. The Tax Court's assumption that this difference was received in 1940 as accumulated ordinary income then paid over is, I think, without basis in the record. If this amount were ordinary income received in that year, certainly petitioner should be taxed on it. Certainly, too, there would be no inconsistency in doing this and also taking this amount into account in determining the amount they received under their contract with Lawton, and, therefore, their capital gain. It seems quite clear to me though that it is incorrect to say that this sum, the net remaining after offsetting receipts and disbursements for each of the years from 1931 to 1940, was a receipt of income in 1931. A decree entered on June 1, 1938, adjudicated (1) that the transaction was a loan and not a sale; (2) that petitioners were entitled to redeem; and (3) that the cause be referred to a master to ascertain and offset their disbursements from 1931 to 1938, inclusive, and determine the amount necessary to redeem. The master's report having come in, the final decree of August 20, 1938, adjudicated that, as a result of offsets of receipts and disbursements through the years, the amount then necessary to be paid to redeem the property was $59,360.16, or $5,639.84 less than the original debt. The decree affirmed, an accounting and offsetting for the years 1938, 1939 and to January 20, 1940, determined a further net reduction of $4,995.48. Of this amount less than $600 was received in 1940. The balance was the result of receipts and offsetting in 1938 and 1939. Thus, of the total of $10,635, which reduced the original loan of $65,000 to $54,-364.67, only $600 was received in 1940. While, therefore, petitioners ought to have been taxed on this $600 as ordinary income received in 1940, I do not think they could have been taxed on the net receipts of other years. I, therefore, except as to $600, concur with the majority in reversing the Tax Court's judgment as to the $10,635.

ments for using the money, and it would have embarrassed them greatly if the negotiations had fallen through. In consideration of this fact, they consented to the lender's method. * * * The Hilperts are expecting to take advantage of this option before it expires and do not feel that they should be taxed at this time simply for borrowing money."