E. J. MURRAY, Petitioner,

v.

COMMISSIONER OF INTERNAL
REVENUE, Respondent.

No. 14579.

United States Court of Appeals
Ninth Circuit.

March 30, 1956.

Rehearing Denied May 15, 1956.

Frederick H. Torp, Paul L. Boley, Charles E. McCulloch, Cleveland C. Cory, Portland, Or., for petitioner.

H. Brian Holland, Asst. Atty. Gen., I. Henry Kutz, Ellis N. Slack, Meyer Rothwacks, Sp. Assts. to Atty. Gen., Washington, D. C., for respondent.

Before STEPHENS, HEALY and POPE, Circuit Judges.

POPE, Circuit Judge.

This is a petition to review a decision of the Tax Court which approved the Commissioner's determination of a deficiency in income tax for the year 1947.[1] The opinion of the Tax Court is reported at 21 T.C. 1049 where the facts of the case are stated at greater length and in more detail than we find necessary here.

In 1928 the petitioner and his wife acquired certain real estate in Klamath Falls, Oregon. They borrowed $64,000 from a savings and loan association which they used to finance the construction of a building upon the property and secured the loan by a mortgage thereon. In 1932, when there was a balance due of

---

1. Deficiencies were determined for both 1946 and 1947, but the 1946 deficiency is not in question here.

$57,000 upon the mortgage debt, petitioner and his wife conveyed the building, subject to the mortgage, to a corporation whose sole stockholders were Wiley and D'Albini, petitioner's attorneys, and to the wives of Wiley and D'Albini. In 1934, the savings and loan association brought suit to foreclose its first mortgage and the property was sold pursuant to the foreclosure decree. On the last day of the statutory redemption period, the property was redeemed from the foreclosure sale by certain assignees of the Wiley-D'Albini corporation. In 1948 the petitioner and his wife brought suit in the Circuit Court of the State of Oregon against Wiley and D'Albini and their assignees and procured a sheriff's deed therefor, and after trial in that court and hearing upon appeal in the Supreme Court of Oregon, Murray v. Wiley, 169 Or. 381, 127 P.2d 112, 129 P.2d 66, the latter court on June 30, 1942, upholding the contentions of the petitioner and his wife, held that petitioner's conveyance of the building to Wiley and D'Albini was made merely to secure petitioner's indebtedness to his attorneys; that their corporation held the property as mortgagee in possession, and that the conveyance to the assignees who redeemed from the mortgage foreclosure was also subject to petitioner's continued right to redeem the property, and that petitioner was beneficial owner of the property subject to the liens of the various defendants, all of whom stood in the position of mortgagees in possession.

The Oregon Supreme Court remanded the case to the Circuit Court for an appropriate accounting in which defendants would be given credit for amounts paid to redeem the property, for the amounts paid to redeem from a federal tax lien, and for amounts owing for the legal services of Wiley and D'Albini, subject to certain named offsets. That court also ordered that upon payment of the amounts of these liens as ascertained by further accounting, the petitioner should be entitled to a reconveyance of the property, and in its decision (as revised on the petition for rehearing), the Oregon Supreme Court adjudged that the defendants should have credits in the ensuing accounting for their costs of management and repairs in the operation of the building while in possession thereof, and that the proceeding before the court was a suit by a mortgagor to redeem, not one to foreclose a mortgage. It was directed that unless petitioner did redeem the property from the liens the decree of the Circuit Court should determine and specify a reasonable time within which petitioner might redeem from the liens or be forever barred.

Upon the remand of the case to the Circuit Court, the accounting was taken as directed. A further appeal to the Supreme Court followed, but the action of the Circuit Court, with one minor exception, was affirmed on January 14, 1947. In the judgment thus affirmed it was ascertained that after charging petitioner with the amount of those liens and interest thereon, and crediting petitioner with the amount of the rents received by the so-called mortgagees in possession, and charging petitioner with the amount of expenses of maintenance, the amount required to be paid by petitioner to redeem was $10,630.41. He paid that sum on February 28, 1947, and on that date a final decree was entered adjudging that he had satisfied all liens on the property, and the defendants were directed to reconvey to him within ten days or have the reconveyance occur through operation of the decree. Possession of the building was thereupon surrendered to petitioner.

Petitioner who is a cash basis taxpayer, had filed no income tax returns for any of the years 1937 through 1945. He had no income during those years, but in July, 1947, he filed separate returns for all the years 1937 to 1946, reconstructing the income he would have had from his property in those years had he been in possession.

The Commissioner determined a deficiency in petitioner's income tax for the year 1947 based for the main part on the further determination that as a result of the transactions culminating in the final court decree above mentioned, petitioner

had realized ordinary income of $57,512.-64 in that year. This sum was arrived at as follows: In the Circuit Court accounting petitioner had been given credit and the defendants there had been charged with $102,589.45 received from rents on the building from 1936 to 1947. Interest had been added to this amount making the total credited to petitioner from this source $135,808.19. Against these credits there was charged maintenance expenses, interest on the mortgage, and other disbursements, totaling $78,295.55. The balance of $57,512.64 was the ordinary income thus charged to the petitioner by the Commissioner.

Petitioner contends that he did not realize any taxable income by reason of the state court litigation mentioned. He points out that he did not in the year 1947 or at any other time receive any cash or money as a result of the litigation and he asserts that the mere fact that the credits on account of the rentals received from the Murray Building were used to reduce the amount which he was required to pay to redeem the property from the liens against it, does not mean that this can be treated as income; that these liens were merely encumbrances on the property, and the amounts were not personal obligations of the petitioner.

Petitioner relies upon the case of Hilpert v. Commissioner, 5 Cir., 151 F.2d 929, 162 A.L.R. 899, as authority for his assertion that the reduction, satisfaction or cancellation of an indebtedness or obligation which is not a personal obliga-

tion of the owner of property does not result in taxable income to him. The Tax Court, deeming the Hilpert case not controlling here, held that the net proceeds realized by the petitioner in the accounting proceeding were income to him; that the fact that the rents were realized only after great delay, did not change the character of the rent from a tax viewpoint. It sustained the position of the Commissioner that petitioner realized this ordinary income in the taxable year 1947 as a result of the termination of the litigation.

That the petitioner did realize ordinary income we think is clear. The economic benefit which petitioner realized and which grew out of the rents from the building was within the rule recognized in Commissioner of Internal Revenue v. Smith, 324 U.S. 177, 181, 65 S.Ct. 591, 593, 89 L.Ed. 830; Helvering v. Bruun, 309 U.S. 461, 469, 60 S.Ct. 631, 84 L.Ed. 864, and Helvering v. Horst, 311 U.S. 112, 115, 61 S.Ct. 144, 85 L.Ed. 75. It was stated in Commissioner of Internal Revenue v. Smith, supra (which dealt with an employee's compensation), as follows: "Section 22(a) of the Revenue Act is broad enough to include in taxable income any economic or financial benefit conferred on the employee as compensation, whatever the form or mode by which it is effected."

We agree with the Tax Court that there is nothing in the Hilpert case which calls for a contrary conclusion.[2]

2. There Hilpert had given one Markell a deed absolute in form conveying rental property in Florida. In his tax return for that year (1931) Hilpert, following a ruling of the Collector, reported this as a sale for the amount he received, $65,000, and paid income taxes on a capital gain of $49,209.69. As a result of an action by Markell v. Hilpert, 140 Fla. 842, 192 So. 392, the Florida courts held the transaction to be a mortgage instead of a sale, and held that Hilpert could redeem after an accounting of the rents. Hilpert made an arrangement with Lawton Investment Co., whereby he executed a deed to the latter placing it in escrow with an arrangement that if his suit to redeem was

successful, the Lawton Investment Co., should have the right to redeem and acquire the property, in which case Hilpert was to receive $10,000 from Lawton plus half the difference between $65,000, the amount which the deed was given to secure, and any less sum which the court should decree as the amount required to be paid to redeem. After successful termination of the suit in 1940, Lawton redeemed the property and paid Hilpert $10,000 plus half the difference between $54,364.67, the amount fixed by decree as the redemption sum, and $65,000, together with some commissions agreed upon. Hilpert thus received $17,067.67, which he returned as his income from the

This brings us to the second or alternate contention of the petitioner which is that assuming taxable income was realized as a result of the proceedings in the Oregon courts, the Tax Court erred in holding that all such income was realized in 1947. Petitioner's argument is that the state court litigation established the proposition that the mortgagees in possession of petitioner's property were in effect constructive trustees for petitioners at all times when they were receiving rents which, as the Oregon courts held, they were obliged to credit or apply for petitioner's benefit. Petitioner argues that hence they owed duties to him similar to those of an agent in possession of rental property. Said petitioner: If the receipts were in fact taxable income, they were taxable to the petitioner in the years of collection by the mortgagees in possession, just as collections made by a rental agent would be taxable to the principal in the years in which the agent received them. Petitioner argues therefore that at least as early as 1942, when the Oregon Supreme Court's first decision was rendered, this relationship between petitioner and the mortgagees in possession had become established. Hence the rentals received up to that time should have been taxable to petitioner in 1942, and the income thereafter received in the years 1942 to 1947 should have been taxable in those years as and when received by those constructive trustees.

We cannot accept this theory of the petitioner. The assessment and collection of taxes upon income presents practical problems which Congress has seen fit to deal with by the adoption of the annual accounting concept. As a practical matter had the Commissioner attempted to collect income taxes for the years 1937 to 1947, during which petitioner's rights and claims were in litigation, he would have confronted the impossibility of determining whether petitioner was or was not receiving income during that period, whether by way of economic benefits or otherwise, and when the first judgment of the Oregon Supreme Court was handed down in 1942, the amount of such economic benefits was still uncertain.

While it is a hardship to petitioner to have all the income here dealt with returned as received in 1947, yet such appears to be the unavoidable consequence of this annual accounting concept.[3] As stated in Security Flour Mills Co. v. Com'r, 321 U.S. 281, 286, 64 S.Ct. 596, 598, 88 L.Ed. 725 (quoting in part from Burnet v. Sanford & Brooks Co., 282 U.S. 359, 51 S.Ct. 150, 75 L.Ed. 383): " 'All the revenue acts which have been enacted since the adoption of the Sixteenth Amendment have uniformly assessed the tax on the basis of annual returns showing the net result of all the taxpayer's transactions during a fixed accounting period, either the calendar year, or, at the option of the taxpayer, the particular fiscal year which he may adopt.' The rationale of the system is this: 'It is the essence of any system of taxation that it should produce revenue ascertainable, and payable to the government, at regular intervals. Only by such a system is it practicable to produce a regular flow of income and apply methods of accounting, assessment, and collection capable of practical operation.' This legal principle has often been stated and applied. The uniform result has

transaction. (The sum of $54,364.67 decreed to be the redemption sum, was arrived at by crediting against the $65,000 mortgage paid, the sum of $10,635.33 of net rentals which Markell had collected.)

The effort of the Commissioner then to charge Hilpert with a capital gain measured by the difference between the sum of $54,364.67 and $10,635.33 and the basis, or March, 1913, value of the property, was properly overturned. The rentals there aggregated only the $10,635.33.

This was less than the amount Hilpert reported. The $17,067.67 was all he could possibly be said to have received. It is hard to imagine by what reasoning the Commissioner arrived at the claimed deficiency. The decision of the court of appeals was plainly correct, but we find nothing there which aids petitioner here.

3. Petitioner's hardship may well be that type which needs some legislative help, such, for instance, as that afforded by former Revenue Code § 107.

been denial both to government and to taxpayer of the privilege of allocating income or outgo to a year other than the year of actual receipt or payment, or, applying the accrual basis, the year in which the right to receive, or the obligation to pay, has become final and definite in amount." Cf. Dixie Pine Products Co. v. Commissioner, 320 U.S. 516, 519, 64 S.Ct. 364, 88 L.Ed. 420. Within that principle, the right of petitioner here to receive income by way of these economic benefits did not become final and definite in amount until 1947. That that was the first year in which the Commissioner could demand payment of tax is made plain by such cases as North American Oil Consolidated v. Burnet, 286 U.S. 417, at page 423, 52 S.Ct. 613, at page 615, 76 L.Ed. 1197, where the court said: "The net profits were not taxable to the company as income of 1916. For the company was not required in 1916 to report as income an amount which it might never receive. * * * There was no constructive receipt of the profits by the company in that year, because at no time during the year was there a right in the company to demand that the receiver pay over the money. Throughout 1916 it was uncertain who would be declared entitled to the profits. It was not until 1917, when the District Court entered a final decree vacating the receivership and dismissing the bill, that the company became entitled to receive the money. Nor is it material, for the purposes of this case, whether the company's return was filed on the cash receipts and disbursements basis, or on the accrual basis. In neither event was it taxable in 1916 on account of income which it had not yet received and which it might never receive." To the same effect see Seligmann v. Commissioner, 7 Cir., 207 F.2d 489,

494,[4] and Lynch's Estate v. Com'r, 2 Cir., 150 F.2d 747, 748, 162 A.L.R. 313.

What appears to us to furnish an unanswerable demonstration that the income was not received by the taxpayer until 1947 is the wording of the decisions of the Oregon Court. After petition for rehearing of its 1942 decision, that court supplemented its opinion by an express holding that the proceedings before the court was a suit by a mortgagor to redeem and not by a mortgagee to foreclose, and therefore the previous opinion would be modified to provide that unless petitioner did redeem the property from the liens, the decree of the circuit court should determine and specify a reasonable time within which petitioner might redeem from both liens or be forever barred. Upon the next appeal the Supreme Court affirmed the Circuit Court by opinion dated January 14, 1947, on all issues except that it directed that the decree be modified to provide that the defendants have a lien upon the mortgaged property in the amount of the ascertained balance but eliminating the personal judgment against petitioner. This was followed by the accounting which showed the balance required for redemption which, as previously stated, was $10,640.31. This amount was paid by petitioner to the clerk of the Oregon court on February 28, 1947.

It is apparent from the foregoing that the Oregon court took pains so to modify its decree as to make it clear that it was adjudging petitioner to have the right or privilege of redeeming but without any obligation on his part so to do or to pay any sum, he being given a reasonable time within which to redeem or be forever barred. All requirement of a judgment against petitioner was eliminated from the final decree. This makes it

---

4. "Moreover, and more important, these cases, consistent with what we think is the universal rule, teach that realization of taxable gain must occur in the year during which it is sought to be taxed. This is so whether the realization comes from the receipt of cash, actual or constructive, or by the acquirement of property, and in the latter case the realization occurs 'when the last step is taken by which he obtains the fruition of the economic gain which has already accrued to him.' Horst, supra. In any event, realization of economic gain as a prerequisite to its taxability must be capable of ascertainment in extent or amount."

clear we think that until the accounting was completed on February 28, 1947, and petitioner paid the amount then for the first time ascertained, he was at liberty either to redeem the property and thus reap the fruits of his litigation, or, if the sum arrived at did not suit him, to walk away and leave the property without redemption. We apply here the general rule as stated in § 42(a) of the Internal Revenue Code of 1939, 26 U.S.C.A., which, as amended at the time here in question, was as follows: "The amount of all items of gross income shall be included in gross income for the taxable year in which received by the taxpayer, unless, under methods of accounting permitted under section 41, any such amounts are to be properly accounted for as of a different period."

The Tax Court properly held that the income realized by petitioner through the Oregon litigation was received by him in the year 1947.

The judgment of the Tax Court is affirmed.

By reason of facts which came to his attention after the submission of this case, Judge STEPHENS deems himself disqualified and hence takes no part in its decision.