Frederick and Ethel Kinzler v. Commissioner.
Kinzler v. Commissioner
Docket No. 80099.
United States Tax Court
T.C. Memo 1962-62; 1962 Tax Ct. Memo LEXIS 246; 21 T.C.M. (CCH) 341; T.C.M. (RIA) 62062; March 22, 1962
Jerome R. Rosenberg, Esq., for the petitioners. William F. Chapman, Esq., for the respondent. FORRESTER
Memorandum Findings of Fact and Opinion FORRESTER, Judge: Respondent determined deficiencies in income tax of petitioners for the taxable years 1954, 1955, and 1956 as follows: Calendar Year
Deficiency
1954
$ 409.59
1955
432.47
1956
806.48
$1,648.54
*247 Petitioners by amended petition, filed at the date of trial, claim an overpayment of tax of $1,978.80 for the year 1956. The issues for our consideration are: (1) Whether petitioners are entitled to depreciation for the years involved in respect to certain machinery; (2) whether petitioners are entitled to an ordinary loss deduction for 1956 upon the disposition of such machinery at a sheriff's sale; (3) whether, if such loss is a proper deduction, it forms part of a net operating loss which may be carried back to the years 1954 and 1955; and (4) whether petitioners have substantiated a deduction of $150 for traveling expenses in 1956. Findings of Fact Some facts have been stipulated and are so found. Petitioners, Frederick and Ethel Kinzler, are husband and wife residing in Rockville Centre, New York. They filed their income tax returns for the years involved herein with the district director of internal revenue at Brooklyn, New York. Petitioner Ethel Kinzler is involved herein solely because of the filing of joint returns, and petitioner Frederick Kinzler will hereinafter be referred to as the petitioner. Petitioner commenced employment as a salesman for the Seely Shoulder *248 Pad Corporation (hereinafter referred to as Seely) on September 22, 1953. On that date, he, Seely, and Kagan, Seely's president, entered into an agreement which provided in part as follows: AGREEMENT made September 22, 1953 between SEELY SHOULDER PAD CORP. (hereinafter called Seely), SIMON KAGAN and FREDERICK KINZLER, as follows: 1. (a) Seely shall sell to Kinzler, and Kinzler hereby buys from Seely, all of Seely's plant, equipment, molds, machinery, fixtures and personal property of every description now in or at Seely's premises located at 16 Commercial Street, Rochester, New York * * * (b) Kinzler shall pay and simultaneously herewith has paid Seely the sum of $25,000.00 in cash and Seely shall and simultaneously herewith has executed and delivered to Kinzler a Bill of Sale with affidavit of ownership conveying title to the property described in Paragraph (a) * * * and Seely shall also execute and deliver and has executed and delivered a separate assignment of its said rights as tenant of the said premises. (c) Immediately following the delivery of the said Bill of Sale and assignment to Kinzler, he shall lease the said premises and the property covered by the said Bill *249 of Sale to Seely for a rental of $50.00 per week and for a term to and including December 31, 1955. 2. (a) Kinzler is hereby granted the absolute and unqualified option to purchase one-half of the issued and outstanding capital stock of Seely, all as hereinafter in this Paragraph 2 set forth. (b) The said option shall be exercisable at any time during the period commencing on October l1, 1954 to and including December 31, 1955 upon written notice (hereinafter called the option notice) to Seely, * * *
(d) On such 45th day from the date of the option notice, there shall be issued to Kinzler shares representing one-half of the total capital stock of Seely issued and outstanding on such day, and on such day Kinzler shall pay therefor in cash an amount equal to one-half of the said net worth as so determined, less, however, the sum of $25,000.00 and less a further amount equal to 50% of the net profits of Seely after taxes, computed by the said accountants for Seely in accordance with good accounting practice, for the period from the date of this Agreement to such day when payment shall be made by Kinzler and stock issued to Kinzler; provided, however, that if such profits shall *250 be an amount which is in excess of the said one-half of the said net worth less $25,000.00, then such excess shall be paid to Kinzler in cash. (e) Concurrently with the said issuance of stock by Seely and the making of such payment by Kinzler, Kinzler shall reconvey to Seely the property covered by the Bill of Sale and shall re-assingnhis rights as tenant both acquired by him under Paragraph 1 above, free and clear. 3. (a) In the event that Kinzler has not exercised his option to acquire one-half of Seely's capital stock as herein provided prior to the expiration date thereof (namely, prior to December 31, 1955), then Seely shall have the option to repurchase the property sold to Kinzler and to re-acquire the rights as tenant of the Rochester premises assigned to Kinzler under Paragraph 1 hereof which option may be exercised no later than February 1, 1956. The said option shall be exercised by Seely by serving written notice upon Kinzler by mail which notice shall be mailed not later than 15 days prior to the said February 1, 1956; and the purchase price (namely, $25,000.00) shall be paid to Kinzler in cash on such February 1, 1956 against delivery of a Bill of Sale and assignment *251 in form and substance the same as that delivered to Kinzler under Paragraph 1 above. (b) In such event of Kinzler not so exercising his option to acquire one-half of Seely's capital stock and in the further event that Kinzler shall not have received Seely's said notice of exercise of option provided for in Subparagraph (a) of this Paragraph 3 by January 20, 1956, then Kinzler shall have the right to sell the said property and to assign the said rights as tenant of the Rochester property for such price of $25,000.00, and Seely in the first instance shall be obligated to buy such property and take an assignment of such rights and assume all of Kinzler's obligations as tenant at such price. In the event that Seely shall fail to comply with its said obligation, then Kagan shall be obligated to buy such property, take an assignment of such rights and assume such obligations. Kinzler's said right to sell shall be exercised by him by notice in writing mailed to Seely and to Kagan, which notice shall be mailed on or before February 1, 1956; and the sale shall be effectuated at 2 PM on February 15, 1956 * * * at which time there shall be paid to Kinzler by Seely or if it shall fail so to *252 do by Kagan the said purchase price of $25,000.00, and concurrently therewith Kinzler shall deliver a Bill of Sale covering the said property free and clear and Kagan and Kinzler shall execute and deliver an instrument of assignment of rights and assumption of obligations with respect to the said Rochester premises. Pursuant to the above agreement Seely executed a bill of sale of the property described therein and an assignment of its lease covering the factory premises to petitioner, who in return paid Seely the sum of $25,000. Petitioner immediately (in form) leased the premises, machinery and equipment back to Seely. He collected rent from Seely for 7 weeks in 1953 in the total amount of $350, but none thereafter. In 1955 petitioner filed a lawsuit against Seely to collect back rent, but said action was discontinued because petitioner believed Seely was then insolvent. Petitioner never insured the equipment and machinery. On February 1, 1954, petitioner executed a chattel mortgage on the machinery and equipment to Max A. Goldbaum to secure a loan of $30,000. Petitioner was not personally liable on the note secured by the chattel mortgage. The proceeds of this loan were paid *253 to Seely either directly or through petitioner. Concurrently with this mortgage petitioner assigned the lease of the premises to Goldbaum. Seely was in dire financial straits throughout the entire period, and had stopped manufacturing by July 1955. On July 26, 1955, petitioner and Jerry Kline formed and incorporated Dukay Molded Products Corp. in an attempt to utilize the Seely plant, machinery and equipment. No stock of Dukay was ever issued. In furtherance of this attempt, petitioner obtained permission from Kagan and Seely to occupy the premises from July 26, 1955, through September 1955, and during this time, petitioner, Kline, Jacoby (who had been overseer of the plant for Seely), and another made an effort to see if the plant (including the machinery and equipment here at issue) could be operated for the manufacture of latex products. Petitioner had had no experience in manufacturing latex products; Jacoby was an engineer; and Kline was in the leather business and a "financial person." Dukay incurred various expenses in connection with the above attempt, and also received a bill for rent at $280 per month for August and September 1955 from Abraham G. Francis, one of the *254 owners of the premises. No use of the machinery and equipment was made after September 1955 and it was seized by the sheriff of Monroe County, New York, for nonpayment of a debt owed by Seely, and was sold on March 5, 1956. Petitioner did not defend this action. Respondent disallowed the deductions by petitioner for depreciation of the machinery and equipment for 1954, 1955, and 1956. During all of 1956 petitioner was a salesman for Ruth Merzon Originals, a manufacturer of ladies' undergarments, and Park-High, Inc., a real estate corporation. Pursuant to the latter employment petitioner incurred travel expenses in the form of tolls, gasoline, and occasional lunches for maintenance personnel of the corporation's building in Perth Amboy, New Jersey. He was not reimbursed for these expenses. Petitioner's sales activity for Ruth Merzon Originals required him to travel throughout New York City, and to travel to Providence, Philadelphia, and Boston. He incurred expenses for tolls, gasoline, and lunches purchased for certain buyers in Providence. He received no reimbursement for these expenses. Petitioner expended at $150least for such travel and necessary business expenses in 1956 *255 for which he was not reimbursed. In his income tax returns petitioner reported $3,200 of income for 1954 from his employment with Seely, and reported no income from such source during 1955 and 1956. Opinion Issue 1 The controlling question as to this issue is whether or not petitioner had such an interest in the machinery and equipment, effected by the September 22, 1953, documents, as would entitle him to depreciate them. [1] Petitioner claims to be the owner of property used in a trade or business or held for the production of income, while respondent alleges that the transactions of September 22, 1953, amounted to a loan of $25,000 by petitioner to Seely, with title to the machinery vesting in petitioner only as security. Such ownership, he concludes, is insufficient to permit depreciation. The one fact that becomes crystal clear upon consideration and analysis of the complex dealings of September 22, 1953, is that the actors did not intend, and petitioner did not become the owner of the Seely machinery and equipment. He paid $25,000 and took a legal title impressed with three options. Two of these options *256 were in his favor, and under them he could recover his $25,000 or get credit for it against a purchase by him of one-half of Seely's stock. If we were called upon to place an exact label on the effect of the September 22, 1953, dealings we would probably conclude that all or most of petitioner's $25,000 was paid for his first option. He was to get full $25,000 credit against the formula price of the Seely stock and, in addition, one-half of Seely's net profits after taxes during the interim period. Consideration of this option, plus the next option, in favor of Seely, to "sell back" at the same price, and plus the third option, in favor of petitioner, also to "sell back" at the same price, and either to Seely or to Kagan (presumably if Seely's credit was not then good) leads us to conclude, as to this (depreciation) issue, that the substance of the September 22, 1953, dealings was not a sale to petitioner and a lease back to Seely. Therefore, petitioner's rights in, and title to the property were allied to the options, and were akin to security rights (if some part of the $25,000 was a loan) and amounted to bare legal title. This conclusion is confirmed by the unrealistic "lease *257 back" price of $50 per week for property which was depreciating at the rate of $68.68 per week. As a general proposition the one with title to property is the one entitled to any depreciation thereon. But one need not be an owner of property to depreciate it. Helvering v. Lazarus & Co., 308 U.S. 252, and, conversely, being the owner of property does not automatically entitle one to the allowable depreciation deductions respecting such property. As was stated in Edith Henry Barbour, 44 B.T.A. 1117, 1121 (1941), reversed on other grounds 136 F. 2d 486 (C.A. 6, 1943), certiorari denied 320 U.S. 778: The test is whether the claimant to depreciation is in such a position as to suffer an economic loss as a result of the decrease in value of the property due to the depreciation. * * * Applying this test we find that petitioner is not entitled to the claimed deductions. Petitioner's argument that he was the party bearing the economic loss from the wear and tear is contradicted by the option prices of $25,000, and further by petitioner's *258 failure to insure the property. One who paid $25,000 for machinery and equipment and regarded himself as owner would normally protect his investment by obtaining insurance. The failure of petitioner to insure indicates that he did not regard the property as his own. The loss occasioned by the wear and tear was not borne by petitioner. At the end of 1955 he could (1) exercise his option (if he had not already done so) to buy half of Seely's stock and return the machinery and equipment to Seely, or (2) by February 15, 1956, require Seely (or Kagan) to repurchase the machinery and equipment for $25,000, if Seely had not already done so. The substance of the transaction was that petitioner was to have his $25,000 returned either in cash or in stock of Seely and was to return the legal title to the property to Seely. Petitioner's interest in this property was a form of security interest, and the burden of the wear and tear was not primarily his. In E. J. Murray, 21 T.C. 1049 (1954), affirmed without discussion of this point 232 F. 2d 742 (C.A. 9, 1956), certiorari denied 352 U.S. 872, a mortgagor out of possession but having a right to redeem *259 was held entitled to the depreciation deduction. In Helvering v. Lazarus & Co., supra, a transaction in form a transfer of ownership with a lease back was held to be in reality a mortgage loan, permitting the mortgagor to depreciate. The above cases hold that the mortgagor may deduct depreciation because when he pays off his debt he receives the property which has suffered wear and tear. The fact that he may default and compel the mortgagee to attempt to realize upon the security does not alter this treatment. Even assuming that there was a lease of the property by petitioner to Seely, petitioner's position is no better, for when a lessee must return leased property or its equivalent in value to the lessor at the termination of the lease in as good condition and value as when leased, the lessor may not take depreciation deductions in respect to the property. Terre Haute & Indianapolis & Eastern Traction Co., 24 B.T.A. 197 (1931), reversed on other grounds 67 F. 2d 697 (C.A. 7, 1933), certiorari denied 292 U.S. 624 (1934). Just as the *260 lessor in the Terre Haute case had a contractual right to be made whole at the expiration of the lease, so petitioner in the instant case had the right to be repaid (either in cash or stock) at the expiration of the option. Therefore, prior to February 15, 1956, at which date petitioner could no longer compel Seely or Kagan to repurchase the property, petitioner was not entitled to depreciation with respect thereto. As to the period after February 15, 1956, no evidence has been adduced showing that petitioner used the machinery and equipment in any trade or business (or that it was being used at all), or held it for the production of income within the intendment of section 167, Internal Revenue Code of 1954: * * * DEPRECIATION. (a) General Rule. - There shall be allowed as a depreciation deduction a reasonable allowance for the exhaustion, wear and tear (including a reasonable allowance for obsolescence) - (1) of property used in the trade or business, or (2) of property held for the production of income. We therefore hold that petitioner may not depreciate *261 said machinery and equipment after February 15, 1956. Issues 2 and 3 In an amended petition filed at the trial petitioner claimed a loss during 1956 resulting from the seizure and sale of the machinery and equipment. He relies on section 165(a) and (c)[2] for this alleged ordinary loss. We have already indicated that petitioner did not use this property in a trade or business in 1956. The *262 only possible time he may have so used it was during the occupancy of the plant by Dukay in 1955, but even this possible use was by Dukay, and not by petitioner. The record shows that there was no "use" of the plant (including the machinery and equipment) for at least 5 months and 4 days prior to the sheriff's sale of March 5, 1956. We are therefore unable to find that petitioner was in any trade or business using the machinery and equipment in 1956 and any loss sustained will not form part of a net operating loss as defined in section 172. Petitioner contends that he suffered a 1956 loss in a transaction entered into for profit, but we have not been shown that any loss occurred in 1956. Petitioner had mortgaged this property for $30,000 in 1954, and this $30,000 went to Seely, yet petitioner testified that he had abandoned his suit for rent in 1955 because he believed this obligation from Seely was uncollectible. This together with petitioner's failure to exercise his second option to require Seely or Kagan to repurchase the property in 1956, strongly suggests that whatever loss there was, was sustained before 1956. We therefore decide issues 2 and 3 for respondent. It may be *263 that petitioner could have put at issue, and supported the proposition that all or some part of the September 22, 1953, dealings amounted to an equity investment by him, which investment became worthless at some later date, entitling him to a capital loss, but he has not done so in this case. Issue 4 We ruled from the bench after hearing the evidence that petitioner had substantiated his claim of $150 for travel expenses. Upon reviewing the record we find nothing to warrant alteration of that conclusion, and this is reflected in our findings of fact. Decision will be entered under Rule 50. Footnotes
1. The useful life and rate of depreciation are not at issue.↩
2. All statutory references are to the Internal Revenue Code of 1954. SEC. 165. LOSSES. (a) General Rule. - There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise. * * *
(c) Limitation on Losses of Individuals. - In the case of an individual, the deduction under subsection (a) shall be limited to - (1) losses incurred in a trade or business; (2) losses incurred in any transaction entered into for profit, though not connected with a trade or business; and (3) losses of property not connected with a trade or business, if such losses arise from fire, storm, shipwreck, or other casualty, or from theft. * * *↩